B. F. ERB v. GERMAN AMERICAN INSURANCE COMPANY OF NEW YORK, GERMAN INSURANCE COMPANY OF FREEPORT, ILLINOIS, and W. A. WILKINS, Appellants, and others.

Instructions: ISSUES: *Clearness.* It is error to give an instruction which submits issues not in dispute, and fails to specify the questions to be determined with more definiteness than a literal copy of the pleadings.

CONSTRUCTION OF PLEADINGS SHOULD NOT BE LEFT TO JURY. An instruction which leaves it for the jury to determine what is alleged in the pleadings is erroneous.

ON PROBABLE CAUSE IN MALICIOUS PROSECUTION. Where the question of probable cause is in issue in an action for malicious prosecution it should be submitted to the jury to find specifically on the facts, or the jury should be instructed hypothetically, within the range of the facts which the evidence tends to establish, as to what would constitute probable cause.

REQUESTS: *Limiting effect of testimony.* Where plaintiff's witness in an action for malicious prosecution had testified for the state on the trial of the criminal case, and defendants introduced his former testimony to show that it was at variance with his testimony given in plaintiff's behalf, it was error to refuse to charge, as requested by defendants, that his evidence on the criminal charge could only be considered as bearing on his credibility.

*Appeal from Carroll District Court.*—HON. Z. A. CHURCH, Judge.

WEDNESDAY, OCTOBER 24, 1900.

THE plaintiff states as his cause of action in substance as follows: That prior to April 3, 1896, the defendants unlawfully conspired together for the purpose of having plaintiff indicted and tried for the pretended crime of arson; that in pursuance thereof they, on April 3, 1896, wilfully and maliciously, and without probable cause therefor, did unlawfully procure him to be indicted by the grand jury of Carroll county on six several indictments for the crime of arson; that under said indictments he was arrested, put under bond, and about October 5, 1896, was put upon trial on one of said indictments, and, after full trial, was acquitted, and that at the following term the other indictments were dismissed; that the defendants unlawfully, maliciously, and without probable cause therefor caused him to be so indicted and prosecuted after being fully informed and advised that he was not guilty of the crime charged. He alleges that by reason of said indictments and prosecution he was put to large expense, namely, $2,000, and loss of time of the value of $500, and that he suffered great distress, humiliation, anguish, and injury to his reputation, character, and standing, wherefore he asks $17,500 damages. Separate trials were demanded by the Fidelity Insurance Company and the Merchants' & Bankers' Insurance Company, and trial had as to the other defendants. The defendants answered separately, admitting the corporate capacity and residence of the companies, and denying generally every other allegation in the petition. The defendant companies and W. A. Wilkin further answered that whatever they or the agents of the companies did in the premises was done after full and careful investigation of all the facts available, in perfect good faith, and upon the advice of counsel that the evidence was amply sufficient to convict said Erb. As a further defense they each allege in substance as follows: That in a suit lately pending A. Brutsche, as plaintiff, sought to recover from this plaintiff, as defendant therein, damages by reason of his (Brutsche's)

property having been destroyed by fire set or caused by Erb. That Erb filed an answer therein, and a counterclaim, alleging substantially the same things as to Brutsche that are alleged in this case as to these defendants, and asking damages against Brutsche for this same alleged malicious prosecution. These defendants say that Brutsche was one of the parties engaged in said alleged malicious prosecution, and was, if there is any liability therefor, jointly liable with these defendants as a tort feasor. That this plaintiff, Erb, settled his counterclaim against Brutsche, and received satisfaction in full therefor, and released Brutsche free of liability on account of said prosecution, wherefore these defendants say that said release releases them from all liability on account thereof. In reply the plaintiff admits that he filed a counterclaim, as alleged, against Brutsche, believing at the time that he was a party to the alleged conspiracy; that thereafter he learned, and now alleges, that Brutsche was not a party thereto, and says that Brutsche dismissed his cause of action against this plaintiff, and he dismissed his said counterclaim against Brutsche. John Heater and Philip Kesselring were also made defendants, and answered, denying generally. On the trial, verdict and judgment were rendered in favor of the plaintiff for $6,500, and the defendants the German-American Insurance Company, German Insurance Company, and W. A. Wilkin appeal. John Heater and Phillip Kesselring do not appear to prosecute the appeal.—*Reversed.*

*M. W. Beach, Salinger & Korte,* and *J. C. Cook* for appellants.

*F. A. Charles, Earl & Prouty,* and *F. M. Davenport* for appellee.

Given, J.—I. The record before us is remarkable in that it is unusually voluminous for a case of this kind; yet it is apparent that much of what occurred on the trial has

been eliminted as unimportant. Still we have about 230 pages of abstract, emphasized by about 180 pages of argument. Appellants' complaints against the instructions are largely of them as a whole, and the discussion of these complaints is so blended with discussion of facts that we find it difficult to arrive at just what the complaints are. As we understand it, appellants' complaints of the instructions generally are these: That they do not make plain to the jury the questions to be decided by it; that they do not distinguish between actions for malicious prosecution and for false arrest or false imprisonment; and that they are erroneous as to what constitutes malice and want of probable cause, and the application of the proofs to those issues. Specific complaints are made against several of the instructions and against the refusal to submit certain special interrogatories. To understand these complaints, it is necessary that we state in a general way the character of the case. On and prior to the ninth day of September, 1893, plaintiff was the owner of a stock of drugs kept in a store in Coon Rapids, on which stock he held policies of insurance in the defendant companies. About 1 A. M. of that day the goods and building and other buildings were destroyed by fire. The companies, acting upon information received largely from John Heater, refused payment, and defended against suits on the policies on the ground that Erb had been engaged in the illegal sale of intoxicating liquors, that he was at fault for the burning of the property, and that he had contracted, before the fire, to sell the goods. Verdicts were rendered below in those cases in favor of the plaintiff, and appeal taken to this court. While these cases were pending, the defendants, acting together upon information derived largely from John Heater, and upon the advice of counsel, procured the plaintiff to be indicted and tried as alleged. On trial on one indictment he was acquitted, and thereupon the others were dismissed. A. H. McVey, attorney for the companies,

acquired the information upon which he advised and the companies acted from John Heater, under an agreement by which Heater was to be compensated. There is a dispute as to what this agreement was, the defendants claiming that is was for an agreed amount for the information that Heater possessed in the form of affidavits, and compensation for further services in looking up further testimony. The plaintiff claims that it was for a certain amount when an indictment was found against him, and an additional amount when he was convicted, and a further sum when the policies and the judgments against the companies were canceled. As to the action of Brutsche against this plaintiff, the contention is whether Brutsche was a joint wrongdoer with the defendants, or either of them, in prosecuting the plaintiff maliciously and without probable cause, and whether the plaintiff had received satisfaction from Brutsche therefor. Plaintff claims that Brutsche did not participate in the prosecution, and that, when so convinced, he withdrew his counterclaim. There was really no dispute on the trial that defendants acted upon information possessed by them, and upon advice of counsel causing the plaintiff to be indicted and prosecuted. The primary and important question is whether they did so with malice, and without probable cause. Indeed, aside from the questions arising from Brutsche's case, and the amount of damage, if any, this is the ultimate and only question in the case.

II. We now inquire as to appellants' complaint that the instructions did not make plain to the jury the questions to be decided by it. We have seen that the questions in dispute were whether the prosecution was malicious and without probable cause; whether Brutsche was a joint wrongdoer with the defendants, or either of them; and whether the plaintiff received from him satisfaction for the wrong done. The entire charge of the court, including the statement of the issues, covers about 19 pages of the abstract;

the statement of the issues covering about 6 pages, and 36 instructions the remaining 13 pages. The statement of the pleadings, although not a copy of them, contains every detail, submits the issues about which there was no dispute, and fails to specify those about which there was controversy. Taken alone, the statement surely fails to point out the questions to be determined, and it would be difficult for any but an experienced lawyer to determine therefrom just what the issues are. In stating the contents of plaintiff's reply, almost a full page is taken in setting out averments therein as to the companies being foreign corporations being authorized to transact business in this state, their agencies in the state, the right to serve notice on such agents, and other matters not proper to be averred in a reply, and which seem to have been properly eliminated from the case in the instructions. In this way the length of the instructions was extended, and the questions to be determined obscured, rather than made plain,— a condition that was not remedied by the instructions that followed. In the first instruction the jury was told that, to entitle the plaintiff to recover, he must establish by a preponderance of evidence the following facts: "First, that he was prosecuted in the criminal action substantially as alleged; second, that the prosecution was instigated and matured by the defendants; third, that the prosecution has terminated in an acquittal of the plaintiff upon one of the indictments as charged in the petition, and that the other indictments have been dismissed; fourth, that the said prosecution is without probable cause; fifth, that it was malicious." While, because of the general denials, this is a correct statement of the issues joined in the pleadings, it is not, because of what was undisputed on the trial, a correct statement of the questions to be determined by the jury, and therefore tended to confuse the jury as to the real questions to be determined. Again, this statement omits the defense based upon the Brutsche case, but in a later instruc-

tion the jury was told that, if it found that Brutsche was a joint wrongdoer with the defendants, and that plaintiff had released him, such release would release the defendants. This is a plain and correct statement of the issue, and the law was somewhat obscured by the qualification that immediately followed, namely, "Unless you find by a preponderance of the testimony that one or more of the matters herein referred to are true." In *Swanson v. Allen,* 108 Iowa, 420, we said: "Nothing is of greater importance in a trial than that the court shall make clear and certain to the jurors the very issues they are to determine. Ordinarily, those required to serve are unaccustomed to the duties devolving upon them, and are likely to become confused by the mass of conflicting evidence and the illimitable arguments of counsel. The very purpose of instructing them is to make plain the issues they are to try, and the rules of law by which the evidence is to be examined and applied. * * * They should not be required to search the pleadings, even though copied into the instructions, for the controverted facts to be passed upon. It is often difficult for an experienced lawyer to fix upon the precise contentions of the parties, and there never can be any degree of certainty that the jurors, without legal training, have been able to do so from an examination of the pleadings. Besides, it is as much the duty of the judge to extract the issues from the pleadings, and make them known and intelligible to the jurors, as it is their duty to pass upon them when this has been done. The practice of referring the jury to the pleadings has been condemned by this court." In conclusion we said: "They should have been made plain and accessible to the jury, in language comprehensible to those unlearned in the law, and free from vain repetition." See, also, *West v. Grocery Co.,* 109 Iowa, 489, and notes "Stating the Issues" to section 3705 of the Code. While it is true, as we have said, that in this case the pleadings were not literally copied in the instructions, the statement

of the issues was a substantial copy, and did not point out the questions to be determined with more definiteness than would have been in a literal copy. This case is unlike *Crawford v. Nolan,* 72 Iowa, 673, in that these pleadings do not contain a plain statement of the matters in controversy, nor does the statement thereof made by the court. It is also unlike *Hollis v. Insurance Co.,* 65 Iowa, 450, for that the court did not instruct fully as to the questions of fact to be determined. In the eighth instruction the jury was told, "If you find from the preponderance of the evidence that the defendants procured plaintiff to be indicted and prosecuted substantially as alleged in his petition," etc. In the seventeenth instruction the jury was told, "If you believe from the evidence that the defendants instituted a criminal prosecution against the plaintiff as charged in the petition," etc. This leaves the jury to determine from the statement made of the petition what was alleged as to defendants procuring plaintiff to be indicted and prosecuted,—a practice, as we have seen, that this court has condemned.

III.  The rule as to probable cause is well stated in *Burton v. Railway Co.,* 33 Minn. 189 (22 N. W. Rep. 301), as follows:  "What facts, and whether particular facts, constitute probable cause, is a question exclusively for the court.  What facts exist in a particular case, where there is a dispute in reference to them, is a question exclusively for the jury.  When the facts are in controversy, the subject of probable cause should be submitted to the jury, either for specific finding of the facts or with instructions from the court as to what facts will constitute pobable cause.  These rules involve an apparent anomaly, and yet few, if any, rules of the common law rest upon a greater unanimity or strength of authority."  A number of cases are cited in support of this announcement of the rule.  In *People v. Kilvington,* 104 Cal., 86 (37 Pac. Rep. 800), it is said: "The authorities are substantially uniform that the ques-

tion of probable cause, however presented, is a question of law, and therefore one to be determined by the court. When the facts in reference to the alleged probable cause are admitted or established beyond controversy, then the determination of their legal effect is absolute, and the jury are to be told that there was or was not probable cause, as the case may be. When, however, the facts are controverted, and the evidence is conflicting, then the determination of their legal effect by the court is necessarily hypothetical, and the jury are to be told that, if they find the facts in a designated way, then that such facts, when so found, do or do not amount to probable cause." See, also, *Ball v. Rawles,* 93 Cal., 222 (28 Pac. Rep. 937). The question of probable cause is in dispute in this case, and under the rule it should have been submitted to the jury to find specially upon the facts, or the jury should have been instructed hypothetically within the range of the facts which the evidence tends to establish as to what would constitute probable cause; but this was not done. In the seventh instruction the jury were told, in effect, that if the defendants procured the plaintiff to be indicted and prosecuted, and were actuated by malice, and, as ordinarily prudent men, had no probable cause for believing the plaintiff guilty of the crime charged, they should find for the plaintiff. In the seventh instruction the court enumerated the facts of which there was evidence tending to show a want of probable cause, but made no reference therein to the facts of which there was evidence tending to show probable cause. Nowhere in the instructions was the case submitted upon a hypothesis including facts relied upon as showing probable cause; such as the information derived from Heater and advice of counsel.

IV. On the trial of this case the defendants offered in evidence the testimony of the witness in chief introduced on the part of the state on the trial of the criminal case

against Erb, and the court instructed that it was admitted for the sole purpose of showing whether or not the defendants had probable cause, and should not be considered in determining whether or not the plaintiff was guilty of the crime charged against him. Brutsche was one of the witnesses on the criminal trial, and these defendants asked an instruction to the effect that his evidence on the criminal trial can only be considered as bearing on his credibility as a witness in this trial. Brutsche is not a party to this action, but simply appears as a witness therein; and his former testimony, if at variance with that on this trial, was surely proper to be considered as bearing upon his credibility. The error, if any, in refusing to submit the special interrogatories asked by the defendant, as well as other questions discussed that we have not considered, need not arise on a retrial, and therefore we do not consider them.

The anomalous condition of this record is explained, in part at least, by the manner in which the trial was conducted by counsel, its duration of several weeks, and the 37 instructions asked by the defendants. We do not think, however, that it can be said from this record that the jury had a clear and correct understanding of the questions to be passed upon, and, to the end that a full and fair trial may be had, we conclude that for the errors pointed out the judgment of the district court should be REVERSED.

GRANGER, C. J., not sitting.