C. J. STILLMAN, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**APPEAL AND ERROR:** Harmless Error—Competent and Incompetent
1   **Evidence of Fact.** The proof of a fact by both competent and incompetent testimony presents no reversible error.

WITNESSES: Examination—Refreshing Memory. A witness who has personal knowledge of a fact may be permitted to refresh his memory from a writing which he did not make, if by so doing he can then testify from his own personal knowledge.

TRIAL: Instructions—Curing Conflict. An apparent conflict in the instructions as to what questions are and what are not in issue may disappear when the instructions are viewed *as a whole.*

TRIAL: Instructions—Law-joined Issue. The court is not in error in submitting to the jury *law-joined* issues (i. e., allegations of an answer not relating to a counterclaim) when the testimony in support of such issue, *though undenied,* is somewhat equivocal.

CARRIERS: Live Stock—Rescission of Contract. Evidence reviewed, and held to present a jury question on the issue of rescission of a live-stock shipping contract.

*Appeal from Palo Alto District Court.*—N. J. LEE, Judge.

APRIL 3, 1923.

REHEARING DENIED OCTOBER 16, 1923.

ACTION to recover damages for delay in the shipment of certain carloads of stock. Verdict for the plaintiff, and defendant appeals.—*Affirmed.*

*Soper & Soper, J. G. Gamble,* and *A. B. Howland,* for appellant.

*E. A.* and *W. H. Morling,* for appellee.

FAVILLE, J.—On Saturday, the 3d of April, 1920, the appellee delivered to the appellant, at its station in Osgood, Palo Alto County, Iowa, 198 head of cattle, for transportation to Chicago. The cattle were accepted by the appellant for shipment. They were consigned to a live-stock commission company at the Union Stockyards in Chicago. A "live-stock contract" of shipment was executed by the appellee and the agent for the appellant. One of the provisions of said contract was that "the first party shall be exempt from all liability for loss or damage to the person or persons or live stock covered by this contract, caused by mobs, strikes, or violence from any source."

The cattle were loaded in eight cars. The loading was finished about six o'clock in the afternoon, and within about a half an hour thereafter the cars were attached to a regular stock train, for transportation to Chicago. Very shortly after the train had left the station at Osgood, the station agent received a telegram from the train dispatcher, advising him to hold the stock because of a strike in Chicago. At Emmetsburg, the carloads of stock were set out from the regular stock train on which they had started, and were returned to Osgood the same evening. Shortly after the agent was advised that the cars of stock had been set out at Emmetsburg, he got into communication with the appellee by telephone, and told him that the stock was being returned to Osgood; that there was a strike in Chicago; and that the cattle could not be taken there. Appellee went to the station that evening, and found that the train crew had unloaded four of the cars. The remaining cars were left on the sidetrack until the following morning, when the appellee unloaded the same and placed the cattle in a field near the station, where they stayed until Sunday night, when he brought them back, and placed them in the stockyards. He testified that the cattle were ready for market, and that he had no facilities to feed or care for them at that time. They were reloaded Monday morning, and billed to Kansas City, Missouri. A new shipping contract was made out and signed for this shipment. The cattle arrived in Des Moines about three o'clock Tuesday morning, April 6th, and were unloaded there and put in the pens and fed. They were reloaded, and arrived in Kansas City for sale on the market, April 8th. Damages are claimed for the failure of appellant to reasonably and properly transport and deliver the cattle at Chicago. It is claimed that there was a depreciation in the market, and that the cattle deteriorated by reason of the delay and matters incident to the shipment to Kansas City. The jury awarded a verdict of $7,315.63, which was reduced by the court to $6,613.57, for which amount judgment was rendered.

I. The appellee testified that "the yards were in very poor condition;" that "the train moved very slow;" that "it was heavily loaded, and couldn't make no time;" that "they [the cattle] were all gone, looked awful bad," and "their general

1. APPEAL AND ERROR: harmless error: competent and incompetent evidence of fact.

appearance was not normal.'' Timely motions were made to exclude these several items of testimony, as being statements of an opinion and conclusion, and not statements of fact. Error is predicated upon the overruling of said motions.

The interrogatories that elicited the several answers above set forth were proper. The answers were in the nature of an expression of the conclusion of the witness. The subject-matter was such as to be difficult of description without some expression of a conclusion.

It appears in the record, however, that, as to the several matters above referred to, there was other and proper evidence in the record. The appearance and condition of the cattle were described in detail, as was also the condition of the yards, and the other matters referred to.

Strictly and technically, appellant's several motions to exclude the answers of which complaint is made, should have been sustained. However, upon the entire record, no prejudice could have resulted to the appellant by reason of the failure to strike this testimony. This is clearly a case where, upon the entire record, it must be held that the error complained of was without prejudice.

II. The appellee, as a witness in his own behalf, testified with regard to the prices obtained for the cattle on the market at Kansas City. In his testimony he referred to what is called "a sales sheet," which is identified in the record as Exhibit A.

2. WITNESSES: examination: refreshing memory.

Appellant insists that it was error on the part of the court to permit the witness to testify as to the classification that was made of the animals at the stockyards at Kansas City and the weights and prices obtained for the animals in the different classes, and to refer to the said Exhibit A in connection with said testimony.

It appears that the said exhibit was made by the commission firm that sold said animals, and was delivered to the appellee as an account and statement of the sale. The appellee accompanied the cattle to Kansas City, and was present and participated in the classification of the animals, as made at the time of the sale, and personally knew of the weights and prices at Kansas City. While he did not make the memorandum, Ex-

hibit A, himself, he did have personal knowledge of the classification, weights, and prices as therein disclosed. He testified that, by referring to said Exhibit A to refresh his memory, he coud testify in regard to said matters from his personal knowledge.

The appellee was an experienced buyer and shipper of cattle. There was no reversible error in permitting him to refresh his recollection from the sales account so made, and to testify with regard to his personal knowledge of the classification, weights, and values.

III. Instruction No. 2 is complained of. It is as follows:

"In the foregoing instruction I have set forth the matters in dispute between the parties to this action which you are required to decide. I call your attention again, however, to the

3. TRIAL: instructions: curing conflict.

fact that many of the matters which I have referred to are not in dispute, and the only matters which you are required to decide are those in dispute, which I especially submit to you in the instructions following."

Instruction No. 1 was a detailed recital of the issues as set forth in the pleadings of the parties. It is urged that Instruction No. 2 is inconsistent, because in the first sentence it states that the court has, in the preceding instruction, set forth the matters in dispute between the parties which the jury is required to decide, and in the second sentence says that many of said matters are not in dispute, and that the only matters which the jury is required to decide are those which are specifically submitted in the following instruction.

It must be conceded that Instruction No. 2 is not happily worded. Instruction No. 1, which preceded it, set out the claims of the parties to the action, as set forth in their pleadings. It refers solely to the several "claims and allegations" of the respective parties. Instruction No. 3 clearly defined and enumerated the precise questions which the jury was to determine. Reading the instructions as a whole, we do not think the jury was misled by Instruction No. 2. When it is read in connection with Instruction No. 1, it is obvious that the thought of the trial court was to inform the jury that the preceding instruction was a recital of the respective claims of the several parties as

made by the pleadings, and that in the instruction following the court had set forth the matters actually "in dispute," and had submitted to the jury "the only matters" which it was required to decide. This is precisely what was done. The jury could not have been misled in this matter, and there was no prejudicial error at this point.

We have expressly disapproved of the practice of setting out the pleadings, in instructions to juries. *Swanson v. Allen,* 108 Iowa 419; *Erbe v. German-American Ins. Co.,* 112 Iowa 357; *Robinson & Co. v. Berkey,* 100 Iowa 136. The practice rather tends to confuse than to enlighten the jury as to the precise questions which it is called upon to decide. We think, however, that, in the instant case, the jury must have understood that Instruction No. 1 was a recital of the issues as made by the parties in their pleadings, and that the jury was to decide only the questions which were set forth by the court in the subsequent instruction as being in dispute between the parties, and as being "the only matters" for its determination.

IV. The appellant alleged in one division of its answer that, on April 3, 1920, there was a strike of the switchmen employed by certain railroads in the city of Chicago, and that because of such strike an embargo was placed upon the shipment of live stock by the appellant, and that appellant's failure to transport the appellee's cattle resulted by reason of said strike.

4. TRIAL: instructions: law-joined issue.

Appellant relied upon the provision of the shipper's contract above quoted. For reply to said answer, the appellee denied any knowledge of the terms and conditions of said contract at the time the same was presented to him for signature, and alleged that the strike referred to was not of such a character as to excuse the failure to transport and deliver the cattle in question.

It appears from the record that the strike referred to was not among the employees of the appellant, but it is claimed that it affected the movement of appellant's trains in Chicago.

In instructing the jury on the subject-matter of the strike, the court told the jury that, if they found that there was a strike in Chicago on the part of the railway switchmen or other railway employees, and that because of said strike and strike

conditions the appellant could not, in the exercise of reasonable diligence and ordinary care, transport the cattle and make delivery thereof at the Union Stockyards in Chicago, then the appellant would not be liable for damages for not having transported the cattle. In the course of the instruction, the court said:

"On the other hand, if you find that there was no strike on the part of railway switchmen and railway employees in Chicago, * * * or if you find that there was such strike, * * * and you also find that, regardless of such strike, the defendant might, in the exercise of ordinary care, * * * have completed the carriage of plaintiff's stock and made delivery thereof at the Union Stockyards in Chicago, then your verdict on this issue should be in favor of the plaintiff."

The complaint of appellant is that the court erred in the following portion of this instruction:

"On the other hand, if you find that there was no strike on the part of the railway switchmen and railway employees in Chicago."

The contention of appellant at this point is that there was no issue on this question, and that the court should not have submitted this question to the jury in this form.

The answer of the appellant pleaded the existence of the strike. The allegations of the answer stood denied as a matter of law, without the necessity of any reply. The reply filed, pleading the specific matter above set forth, did not waive or change the denial implied by law. Therefore, the question of whether or not there was a strike in Chicago, as pleaded by the appellant in its answer, was in issue, and the burden of establishing the existence of such strike rested upon the appellant. True, the appellee offered no evidence to controvert the testimony of the appellant in support of its allegation that there was a strike in the city of Chicago at the time. Notwithstanding this situation in the evidence, it was still an issuable fact for the jury to determine whether or not such a strike did exist. But one witness was offered by the appellant to support its contention in respect to this matter. Much of his testimony was hearsay.

It was for the jury to determine the weight and credibility

to be given to this evidence. The matter was in issue, and even though the appellee offered no evidence to controvert the testimony of the witness produced by the appellant, the court did not, under the entire record in the case, commit prejudicial error in giving to the jury the portion of the instruction complained of.

V. One of the contentions of the appellant is that the contract for shipment of the stock to Chicago was abrogated and rescinded by mutual agreement of the parties, and that because thereof the appellee could not recover damages under said contract.

5. CARRIERS: live stock: rescission of contract.

The shipment of cattle by the appellant to Chicago was abandoned by the appellant, and the cars of cattle set out from the train at Emmetsburg and returned to Osgood. This was done without the knowledge or consent of the shipper. A part of the stock was unloaded by the employees of the appellant, and the remainder was left in the cars. The appellee, being notified of this situation, took possession of the stock at Osgood, and reconsigned the same to Kansas City, as the most available market.

It was for the jury to determine, under all of the facts and circumstances disclosed by the testimony, whether or not the parties mutually rescinded and abrogated the original contract of shipment. Obviously, the appellant had put it beyond its power to complete that contract, and to deliver the cattle at the Chicago market under the original contract of shipment. Whether there was a mutual agreement between the appellee and the agent for the appellant to abrogate and rescind said contract was for the determination of the jury, in the light of all of the facts and circumstances surrounding the transaction. The court submitted a special interrogatory to the jury upon this question, and the jury found specially that the contract of shipment to Chicago was not mutually abandoned and abrogated.

There was no error in submitting this question to the jury, and its finding has support in the evidence. We cannot interfere, under such circumstances.

VI. The question as to whether or not the appellant used reasonable care in performing its contract for the shipment of said stock, and whether or not said contract was abandoned and

rescinded, and whether or not the appellant had legal excuse for its failure to perform the said contract on its part, were all questions for determination by the jury, and were properly submitted to it for such determination.

We find no errors of law in the record that require interference on our part. The judgment of the trial court must, therefore, be—*Affirmed.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.