Kansas City Southern Railway Company *v.* Akin.

Opinion delivered March 3, 1919.

1. Limitation of Actions — Answer — Denial of Allegations of Complaint.—An answer alleging that plaintiff's cause of action is barred by the statute of limitations of three years and denying that plaintiff had a right to maintain the suit, did not con-

stitute a denial of the allegations of the complaint as to a non-suit in the Federal Court and of the bringing of the present suit within a year thereafter.

2. SAME—COMMENCEMENT OF ACTION.—Under Kirby's Dig., § 6033, as to what is a commencement of an action, a suit was commenced when the complaint was filed in the office of the circuit clerk and summons was issued thereon.

3. SAME—INJURY TO PASSENGER.—A cause of action against a railroad company for personal injuries to a passenger is barred by Kirby's Dig., § 5064, in three years.

4. EVIDENCE — HYPOTHETICAL QUESTIONS. — Hypothetical questions were proper where there was testimony tending to prove the facts on which they were based.

5. NEGLIGENCE—PROXIMATE CAUSE—JURY QUESTION.—Conflicting testimony as to whether an injury to plaintiff was the proximate cause of tuberculosis *held* a question for the jury.

6. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS.—Where errors complained of in instructions were of the language merely which could have been corrected if specific attention had been called to them, judgment will not be reversed.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

*James B. McDonough,* for appellant.

1. The cause of action was barred by the statute of limitations.

The complaint was filed April 4, 1918. It shows on its face that the injury was done on August 28, 1914. The file mark on the complaint is a part of the record and conclusive. 41 Ark. 53. The answer and hence the record shows that the suit was brought more than three years after the cause of action accrued and that the bar of the statute was claimed. The complaint showed that the action was barred and defendant could raise that question by demurrer because no cause of action was stated. 108 Ark. 219; 112 *Id.* 572. The filing of an answer does not waive the demurrer. Kirby's Digest, § § 6096, 6119; 65 Ark. 495; 67 *Id.* 184; 64 *Id.* 510; 44 *Id.* 205; 8 *Id.* 74; 49 *Id.* 277. The beginning of the introduction of the evidence is a ''stage of the proceedings'' and hence defendant had the right to object to the introduc-

tion of any evidence on the ground that the action was completely barred. The court erred in admitting any evidence.  41 Pac. 400; 116 *Id*. 782, 944.

Unless there exists some reason to stop or toll the operation of the statute of limitations plaintiff is barred as a matter of law.  Kirby's Digest, § 5064.  The statute applicable to torts and the bar is three years.  83 Ark. 6; 71 *Id*. 71.  Unless plaintiff shows that the statute of limitations was suspended as to him, the judgment below must be reversed.  He can not claim any exception to the running of the statute unless that claim is founded on some act of the Legislature.  The Legislature has made no such exception and the courts can make none. 6 Ark. 14; 13 *Id*. 291; 16 *Id*. 671; 24 *Id*. 487.  Statutes of limitation are favorably regarded by the courts.  6 *Id*. 513.  Plaintiff attempts to allege facts relieving him of the bar, *i. e.*, that he brought suit in the circuit court of the Fort Smith District which was removed to the United States District Court, that a nonsuit was taken without prejudice.  But the allegation is not sufficient to toll the statute.  It is not alleged that the United States court had jurisdiction and it had none unless the controversy exceeds $3,000 exclusive of interest.  4 Fed. Stat. Ann., p. 842.  Besides there is no allegation of diversity of citizenship and the fact does not appear of record.  The jurisdictional facts must be alleged and shown.  A State court can not take judicial knowledge of the contents of pleadings in other or the same cases in its own record. 15 Ark. 84.  The State court could not take knowledge of the contents of the pleadings in the Federal court and the objection to the introduction of any evidence was well taken because the cause of action was shown to be barred as matter of law.  The burden was on the plaintiff to rebut the defense of the bar of the statute.  69 Ark. 311. But if mistaken on this point, plaintiff must fail for lack of proof.

2.  Plaintiff introduced no proof to sustain his allegation of nonsuit in the United States court.  There is no evidence that this same suit was pending in the United

States court and was dismissed without prejudice. The exhibit of a record entry does not prove itself or the fact. If the Arkansas statute giving plaintiff the right to bring a new suit within one year applies to a nonsuit taken in the Federal court, before plaintiff can avail himself of it he must prove the allegations of his complaint, as the allegations do not prove themselves. He must prove that it was the *same cause of action.* 69 Ark. 311. The burden was on him to prove this by a duly authenticated copy of the record. The complaint is the *only evidence.* 156 Pac. 955; 54 N. E. 200. The identity of the suits must be shown by the record and not *aliunde.* 79 Ill. App. 22.

Paragraph 5 of the answer did set up the fact that suit has been brought in the Federal court, but that part was stricken out on motion of plaintiff, and he is precluded from claiming any benefit of it. 64 Ark. 213. In addition he did not offer this answer in testimony. Pleadings are not evidence unless offered in testimony. 102 Ark. 640. The answer was amended by the court on motion of plaintiff and the original can not be evidence. 33 Ark. 251; 58 *Id.* 490. State laws have no power over procedure in the Federal courts. They do not control Federal court procedure. Kirby's Digest, § 5083, only applies to Arkansas courts. The law of the forum governs. 99 Ark. 105; see also 3 *Id.* 409. A nonsuit in a Federal court is not governed by the Arkansas statutes. 62 N. Y. App. Div. 56; 4 Fed. C. No. 1960; 63 S. E. 135; 120 Ga. 104; 110 *Id.* 223; see also 246 Fed. 236; 247 *Id.* 478; 232 *Id.* 288; 236 *Id.* 419; 90 S. E. 1040; 67 *Id.* 668; 97 Ga. 722; 122 *Id.* 608.

4. Plaintiff can not avail himself of the nonsuit because there was some time left of the three years after the nonsuit was taken. There is no legal proof as to when the nonsuit was taken. It is alleged it was on April 7, 1917. The tort was committed August 2, 1914, and hence the three years statute of limitations did not expire until August 27, 1918. Therefore according to the allegations at the time the nonsuit was taken the three years statute

had not barred the cause of action. The clear purpose of meaning of these limitation statutes saving the right to sue after a nonsuit is to preserve the right of suing in cases where the statute of limitations has expired before the nonsuit and while the case was pending. The legislative purpose was to give parties the right to bring suit over again when they had brought it within the period and the period had expired and a nonsuit was suffered thereafter. If plaintiff still has time to sue after the nonsuit there is no reason for applying the statute.

If the action is not barred and still in existence and plaintiff still has time to bring suit after his nonsuit the reason for the law does not exist. When the reason for a law ceases, the rule of law ceases to exist. 10 Ark. 184; 77 *Id.* 535; 23 *Id.* 684; 11 *Id.* 28; 93 *Id.* 215; 102 *Id.* 65; 91 Ill. App. 20. The cases in 93 Ark. 215; 102 *Id.* 65, and 107 *Id.* 353 do not apply here, and the point here has not been decided by this court. See 171 Pac. 928; 47 Ark. 170.

5. Plaintiff did not bring this second suit within the year named in the saving clause. The summons and return are parts of the record. The burden was on plaintiff to show by the record that this second action was brought within the year. 47 Ark. 479; 27 *Id.* 343; 103 *Id.* 601. If the record fails to show that the summons was placed in the sheriff's hands on or before April 7, then plaintiff fails and no evidence could be introduced and a directed verdict for defendant was required. The new complaint was filed April 4, 1918, and summons issued on that day which was served on the local agent of appellant on *the second day after the year had expired*. There is no showing *when* the summons was placed in the sheriff's hands unless the date of the service is the day it came to him. The law requires the sheriff to endorse thereon the time when a writ comes to his hands (Kirby's Digest, § § 6883, 7815-16). This essential fact can not be shown except by the record. The statute must be observed and an oral return is not sufficient. 60 Ark. 182. The object of the return is to show the manner and time

of the service. Kirby's Dig., § 6043. Therefore on the face of the return the service was after the year had expired and the burden was on plaintiff to show affirmatively by the record that the writ was placed in the sheriff's hands before the year expired, so as to show that the suit was brought within the year. 47 Ark. 479. It was plaintiff's duty to see that the sheriff did his duty. Kirby's Digest, § 6040.

The presumption that public officers have done their duty does not supply proof of a substantive fact. 92 U. S. 281; 2 Ark. 26; 3 *Id.* 505; 95 *Id.* 188; 145 Fed. 273; 99 Mass. 605; 100 U. S. 693; 200 *Id.* 480; 45 N. E. 463; 68 Pac. 58.

The mere signing and sealing a summons by the clerk is not sufficient. It must be delivered to the sheriff or some one for him. 62 Ark. 401. From the above it is clear that plaintiff did not commence his second action until two days after the year expired and he is barred.

6. The evidence is insufficient to show that the injury was the proximate cause of the "flaring up" or development of tubercular germs in plaintiff's body. 108 Ark. 14, relied on by plaintiff below, will not support the judgment here. This case is more like 119 Ark. 349. The case here rests much on conjecture. 116 Ark. 36. No damages can be recovered for injuries due to tuberculosis. The court below refused to take that question from the jury and erred in so doing. Outside the damage from tuberculosis plaintiff's damages were very small. It was error to refuse to instruct that plaintiff could not recover for damages caused by tuberculosis and it was error to refuse defendant's requests withdrawing this question from the jury. The evidence on that question was insufficient to take that issue to the jury. 122 Ark. 445; 99 *Id.* 69; 119 *Id.* 349.

There was error in allowing the hypothetical questions asked and the testimony given in response thereto over the objections of defendant. 108 Ark. 14. The law does not allow mere conjectures or inferences to go to a jury as evidence. 116 Ark. 82. This court takes judi-

cial knowledge of the circulation of the blood. 16 Cyc. 856; 79 Ark. 608. Blood does not follow gravity down the circulating medium, hence it can not be that tubercular bacilli come down the circulating medium to the sheath and into the testicle. The positive evidence of Doctor Foster, who is plaintiff's own witness, is that tuberculosis will not follow unless the encasing walls are broken.

A disreputable presumption can not prevail over positive evidence. 203 S. W. 246; 155 *Id.* 426; 148 *Id.* 925.

Theory can not supply the place of evidence. The whole of the expert testimony is a mass of theory and inference. 72 Atl. 979; 113 Ark. 353. The evidence of the doctors was surmise pure and simple. All formed an opinion as to past facts. All were mere surmise on conjecture. 116 Ark. 56. The recovery here is clearly against the law.

7. There is no evidence that the bruise in the groin in any way injured the spermatic cord.

8. The injuries in the wreck were not the proximate cause of tuberculosis, and there was nothing to take the case to a jury, and there was no liability shown. 119 Ark. 349; 238 Fed. 14; 117 Pa. 390; 70 App. Div. N. Y. 60; 71 So. Rep. 685; 106 N. E. 837; 24 L. R. A. (N. S.) 978; 132 Am. St. 204; 119 N. W. 200; 113 *Id.* 1016; 39 *Id.* 884; 116 Ark. 56. Where the evidence tends equally to sustain either of two inconsistent propositions a verdict in favor of one bound to sustain one of them against the other is necessarily wrong. 116 Ark. 82; 119 Ark. 349; 197 S. W. 492; 62 N. E. 349; 12 N. Y. App. Div. 512; 71 S. E. 525; 96 S. W. 1045. If tuberculosis was a new infection plaintiff can not recover. 72 Atl. 979; 133 N. W. 142. See also 137 S. W. 1053.

9. The evidence of Doctors Cooper and Wood was clearly admissible, so was Doctor Eberle's. All were erroneously excluded. 111 Ark. 554; 117 *Id.* 396; 98 *Id.* 352.

10. It was plain error to exclude the testimony of Dr. Wood. 148 N. Y. 88.

11. Having called Drs. Wood, Wolferman and Eberle, plaintiff waived his privilege and could not object to the evidence of Dr. Cooper. 98 Ark. 352; 148 N. Y. 88; 156 S. W. 699; 158 *Id.* 733. See also 155 N. Y. S. 887; 193 N. Y. 11; 10 N. Y. S. 159; Wigmore on Ev., § 2390; 104 N. Y. 352.

12. Plaintiff also waived his privilege because he made no objections and hence consented to the introduction of Dr. Cooper's evidence as to his treatment and the causes of the operation. 193 N. Y. 11; 85 N. E. 827; 20 L. R. A. (N. S.) 1003; 98 Ark. 352.

13. The evidence of plaintiff and Dr. Foster as to the condition of plaintiff's arm in 1903 to 1906 was too remote and inadmissible. 1 Elliott on Ev., § 42.

14. There is reversible error in the hypothetical questions propounded to plaintiff's expert witnesses. 100 Ark. 518; 103 *Id.* 196; 87 *Id.* 243; 100 *Id.* 518; 2 Elliott on Ev., § § 420, 1228.

15. The photographs were inadmissible. 2 Elliott on Ev., 1223.

16. The evidence of the experts that tuberculosis was more likely to result from light trauma than from a severe one was inadmissible. Plaintiff cannot set up two inconsistent theories. He cannot offer proof contradicting his pleadings. 2 Ark. 512. Evidence which does not tend to prove any issue is not admissible. 7 Ark. 470; 57 *Id.* 512.

17. There is error in the instructions, both in giving and refusing. The accident occurred in Oklahoma and the rights and obligations are governed by the laws of that State. Rev. Laws of Okla., 1910, § 800; 172 Pac. 929; 18 Okla. 75; *Ib.* 97; 98 Ark. 240; 67 *Id.* 295.

*Oglesby, Cravens & Oglesby,* for appellee.

1. The suit was not barred. It was brought within a year after the nonsuit, without prejudice. The United States Court had jurisdiction and it was the same suit. 49 Ark. 248.

2. The proof shows that the nonsuit was taken within the year and it is so alleged. The allegations were not denied. 72 Ark. 62. The cases cited by appellant have no bearing here. 100 Fed. 146; 128 *Id.* 183; 36 S. E. 775. The judgment was no bar. 53 L. R. A. 931; 34 *Id.* (N. S.) 1195; 217 U. S. 209; 9 R. C. L. 212-13; 107 Ark. 353; 115 Fed. 69; 71 N. E. 371; 123 N. W. 371; 38 S. E. 253; 12 Ohio St. 620; 42 S. E. 333; 66 *Id.* 586.

3. The record shows that the suit was brought within the year after the nonsuit. The complaint is marked, "Filed April 4, 1918," and summons issued April 4, 1918, and returned duly served on April 9, 1918.

4. The evidence shows that the wreck caused the injury. If the condition of the waiting room was the proximate cause of the disease the railroad company is liable. 114 Ark. 112. The court properly refused to take the case from the jury. It was a jury case. 118 Ark. 569; 129 Ark. 521.

The cases 203 S. W. 246; 1148 *Id.* 925, and 155 *Id.* 426; are not applicable, and the cases on expert testimony, 72 Atl. 979 and 113 Ark. 353, are not in point. King and Drs. Eberle, Foster and Stewart were experts and testified that the injuries received in the wreck brought about plaintiff's condition and in addition all of the defendant's witnesses testified that any injury to a person predisposed to tuberculosis which causes loss of weight or strength or vitality, or causes him to run down, would cause inactive bacilli to become active. It is not controverted that he did not receive injuries to his back, groin and skin; that his urination, which before was normal, became so frequent that he had to go to the toilet from three to six times at night; that he became physically weak after the wreck and commenced going down until he reached 140 pounds in weight; that he suffered pain for a long period of time and was not able to do a full day's work. This brings the case squarely in line with the Steel case in 108 Ark. 14, a case exactly in point. See also 127 Ark. 259; 118 *Id.* 569.

A case was made for a jury and their verdict is conclusive. 118 Ark. 569; 114 *Id.* 112; 107 *Id.* 545; 116 *Id.* 82. See also 91 *Id.* 343; 63 Fed. 942; 238 Fed. 14.

There was no error in admitting or excluding testimony, nor any error in the court's charge.

There were no specific objections to the expert testimony. 120 Ark. 530. Nor were there any specific objections to the instructions. The instructions are approved by the Oklahoma cases. 124 Pac. 2. The instructions were really too favorable to defendant. The case was fairly submitted to a jury and no prejudicial error was committed on the trial and the judgment should be affirmed. Cases *supra.*

WOOD, J. This appeal is from a judgment in favor of appellee against appellant in the sum of $3,000.

On the 4th day of April, 1918, the appellee filed in the circuit court of Sebastian County his complaint against the appellant in which he alleged, in substance, that on August 28, 1914, he was a passenger on appellant's train from Joplin, Missouri, to Fort Smith, Arkansas; that through the negligence of appellant the coach in which he was riding, with other cars, was derailed and overturned, by reason of which he was thrown with great force and violence to the opposite side of the car and was mashed, cut and bruised on his head, face, back and legs, thereby causing him great physical and nervous shock, by which he was rendered unconscious and sustained great and permanent injuries and caused great pain and suffering. That there had been tubercular bacilli in his system for some time prior thereto, but at the time he received the injuries he was in good health and the tubercular germs were encapsulated, innocuous and inactive. That as a result of the bruises produced by his injuries his strength and vitality were greatly affected and by reason of his injuries the tubercular germs became active and tuberculosis developed in his spermatic cords and testicles. That on account of said tubercular condition a surgical operation had to be performed, resulting in

the removal of his testicles. That by reason of the injuries and the results thereof above described he had suffered great physical pain and mental anguish and humiliation, and had been damaged in the sum of $3,000, for which he prayed judgment. That prior to August 28, 1916, he brought suit in this court against appellant for the cause of action and injuries herein sued for, which suit was dismissed by nonsuit without prejudice on April 7, 1917, in the United States District Court, to which it was removed, and this suit is now brought within less than one year from date of said nonsuit and dismissal for the same cause of action. The clerk's certificate shows that summons was issued on the 4th day of April, 1918, and returned duly served on the appellant on the 9th day of April, 1918.

On the 27th day of April, 1918, appellant answered, denying the material allegations of the complaint as to negligence and as to the injuries alleged and the damages sustained. Paragraph 5 of the answer was as follows:

"The defendant alleges that the plaintiff in this case brought suit herein for the same alleged cause of action set forth in the complaint herein, and said cause was tried in the United States District Court, Western District of Arkansas, Fort Smith Division, and all of the evidence in said cause was heard on both sides. At the conclusion of all of the evidence, and after all the evidence had been introduced, a motion was made by the defendant to direct a verdict in favor of the defendant, in so far as the plaintiff claimed any damages resulting from the development of tuberculosis in his body. After that motion had been argued by both sides, and after the court had taken the same under advisement, the court held that the motion must be sustained. Thereupon and thereafter, and not until then, the plaintiff asked leave to take a nonsuit. This defendant denies that said nonsuit was taken without prejudice, and alleges that the trial of said cause in said United States Court was a final determination and final settlement of all matters between the

plaintiff and the defendant, growing out of the same alleged cause of action, and the same facts, and that therefore, the cause of action which the plaintiff now sets forth in his complaint is *res adjudicata.*

"Defendant further alleges that by reason of the suit in said United States Court, in costs and necessary expenses, in defending said suit, the defendant expended therein the sum of $1,200. The defendant alleges that it is entitled to recover from plaintiff said sum of $1,200 as costs and expenses, incident to the trial of said cause in said United States Court."

Paragraph 6 was, in part, as follows:

"The defendant alleges that the alleged cause of action of the plaintiff has long since been barred by the statute of limitations of three years of the State of Arkansas. In that connection, the defendant alleges that the plaintiff, in the year 1917, brought a suit on this same cause of action in the State of Oklahoma in the District Court within and for LeFlore County, State of Oklahoma, and thereafter dismissed that suit. The defendant denies that the plaintiff has a right to bring and maintain this suit, and alleges that the statute of limitations of the State of Arkansas has barred the same; and denies that the dismissal of the suit in the United States District Court gave the plaintiff the right to bring and maintain another suit in the State court within one year thereafter; but alleges that said alleged cause of action set forth in the complaint is fully and completely barred by the statute of limitations of the State of Arkansas.

"Premises considered, the defendant prays judgment against the plaintiff in the sum of $1,200, costs and expenses, expended in the United States District Court for the Western District of Arkansas, and also for all costs in this action laid out out and expended."

On the 21st day of June, 1918, the appellee filed a demurrer to appellant's plea of *res adjudicata set* up in the 5th and 6th paragraphs of its answer.

And, also, on the same day, the appellee filed the following motion:

"Comes the plaintiff, F. M. Akin, and moves the court to strike the following from paragraph 5 of defendant's answer:

" 'Defendant further alleges that by reason of the suit in said United States Court, in costs and necessary expenses in defending said suit, the defendant expended therein the sum of $1,200. The defendant alleges that it is entitled to recover from the plaintiff said sum of $1,-200, as costs and expenses, incident to the trial of said case in said United States Court.'

"And further to strike from its answer its prayer for judgment of any amount exceeding the costs taxed in the case in which judgment was rendered against plaintiff in said suit in said United States Court for costs, defendant not being entitled to recover any other sum."

On June 26, 1918, the following order was entered of record:

"Comes defendant by its attorney, J. B. McDonough, and files answer herein; plaintiff's demurrer to the 5th and 6th paragraphs of defendant's answer heretofore filed on June 21, 1918, this day noted of record. Plaintiff's motion to strike certain language from paragraph 5 of defendant's answer heretofore filed on June 21, 1918, this day noted of record. And the court being well and sufficiently advised in the premises, doth sustain said motion as to paragraph 5, and defendant excepts, and doth overrule said motion as to paragraph 6, and plaintiff excepts.

"Plaintiff moves to strike language between brackets in paragraph 6, which said motion is by the court sustained, and defendant excepts."

On the same day, June 26, 1918, an amended answer was filed, which omitted that part of paragraph 5 of the answer to which the above and foregoing motion to strike was directed.

Paragraphs 6 and 7 of the amended answer contained all that was embraced in paragraph 6 of the original answer except the prayer for judgment against the plaintiff in the sum of $1,200, costs and expenses in the

United States District Court for the Western District of Arkansas.

The bill of exceptions, after setting out the amended answer was filed the appellee renewed his demurrer and motion to strike paragraphs 5 and 6 from the answer. The court overruled the demurrer and motion to strike except as to certain language set forth in the bill of exceptions. The bill of exceptions further shows that "there was no ruling, one way or the other, on the motion to strike out a part of paragraph 5, as the same was omitted in the amended answer which was filed June 26, 1918."

The bill of exceptions, after setting out the amended answer, contains the following recital:

"Thereupon the plaintiff renewed and filed anew the demurrer above mentioned and motion to strike paragraphs 5 and 6 from said complaint above set forth. The court treating said demurrer both as a demurrer and a motion to strike, sustained the same as to paragraph 5 and struck out said paragraph 5 from said complaint."

*First.* Appellant contends that the cause of action was barred by the statute of limitations as shown on the face of the complaint. True the complaint alleges that the injury was done on August 28, 1914, and the filing of the complaint and the issuing of the summons shows that this suit was instituted April 4, 1918, more than three years after the cause of action had accrued; but the complaint alleges that "prior to August 28, 1916, plaintiff brought suit in this court against defendant for the said cause of action and injuries herein sued for, which suit was dismissed by nonsuit without prejudice on April 7, 1917, in the United States District Court, to which it was removed, and this suit is now brought within less than one year from the date of said nonsuit and dismissal for the same cause of action."

The appellant, in paragraph 5 of its amended answer, admitted that the appellee had brought this suit "for the same alleged cause of action set forth in the complaint herein" and that a nonsuit and dismissal was

taken in the United States District Court; but denied, in paragraph 6, "that the dismissal of the suit in the United States District Court gave the plaintiff the right to maintain another suit in the State court within one year thereafter," and alleged that the said cause of action "was completely barred by the statute of limitations." But counsel for appellant contends that paragraph 5 of the amended answer, *supra,* was stricken out and that, therefore the burden was upon the appellee to support the allegations of his complaint as to the nonsuit in the Federal Court. The recitals of the record proper show that certain language was stricken from paragraph 5 of the original answer as set out in the motion to strike; but the language containing the admission as to the nonsuit for the same cause of action was not stricken from paragraph 5 of the original answer, and the language containing this admission was brought, as the bill of exceptions shows, into paragraph 5 of the amended answer. While the recital of the bill of exceptions shows that the court sustained the motion "as to paragraph 5 and struck out said paragraph 5 from said complaint," yet, when this recital is taken with the further recital in the bill of exceptions that "there was no ruling, one way or the other, on the motion to strike out a part of paragraph 5, as the same was omitted in the amended answer which was filed June 26, 1918," it is obvious that the whole of paragraph 5 of the amended answer was not stricken out, and the prior recital to that effect had reference to the language of paragraph 5 of the original answer which was stricken out on motion of the appellee, as shown by the order of the court to that effect entered on the judgment roll or record proper, which is controlling.

The language in paragraph 6, to-wit: "That the alleged cause of action of the plaintiff has long since been barred by the statute of limitations of three years of the State of Arkansas," and the further language, to-wit: "This defendant denies that the plaintiff has a right to bring and maintain this suit," does not constitute a denial of the allegations of appellee's complaint

as to nonsuit in the Federal Court of a suit on the same cause of action for which this suit was brought and the bringing of this suit within "less than one year from date of said nonsuit."

We conclude, therefore, that the pleadings show that the present suit was instituted within one year after the nonsuit in the Federal Court of a suit based on the same cause of action.

The present suit was commenced when the complaint was filed in the office of the circuit clerk and the summons was issued thereon. The endorsement and notation of the clerk shows that the complaint was filed, and the summons was issued on the 4th day of April, 1918. Section 6033, Kirby's Digest; *Burleson* v. *McDermott,* 57 Ark. 229; *Railway* v. *Shelton,* 57 Ark. 459; *Barker* v. *Cunningham,* 104 Ark. 627.

Section 5083 of Kirby's Digest gives a plaintiff who has suffered a nonsuit the right to commence a new action "within one year after such nonsuit suffered."

But for this statute appellee's cause of action would have been barred within three years from August 28, 1914. See section 5064, Kirby's Digest; *Emrich* v. *Little Rock Traction & Electric Co.,* 71 Ark. 71; *St. L., I. M. & S. Ry. Co.* v. *Mynott,* 83 Ark. 6.

The pendency of the suit in the Federal Court for the same cause of action had the effect to toll the general statute of limitations of three years, and when nonsuit was taken in the Federal Court and the present suit was begun for the same cause of action within one year after such nonsuit, appellee had the right to maintain the same under the express provisions of section 5083 of Kirby's Digest, *supra.*

The language of the statute is exceedingly comprehensive. There are no restrictions to causes of action begun in the State courts. There is nothing to indicate a purpose to so confine it. The language is broad enough, and was doubtless so intended, to cover any action in any court having jurisdiction within the State.

The doctrine applicable here, which is supported by practically all the modern authorities upon the subject, is forcefully stated in the case of *Gassman* v. *Jarvis*, 100 Fed. 146-7, as follows:

"The State court possesses original jurisdiction of all such causes of action. The removal of the case, and its subsequent dismissal, untried and undetermined, cannot, under any known rule of law, be held to be a merger of the cause of action; nor can the removal or dismissal of the cause be pleaded in abatement of the new suit brought in the State court. When a cause of action removed into a court of the United States is dismissed therefrom without any trial or determination of the merits, the right of action still remains in full force and vigor, unaffected thereby, and the party having such right of action may bring suit thereon in any court of competent jurisdiction, the same as though no previous suit had been brought."

*Stevenson's Admr.* v. *Illinois Central R. R. Co.*, 117 Ky. 855, 4 Ann. Cas. 890, and case note; *McIver* v. *Florida Central Ry. Co.*, 110 Ga. 223; *Hooper* v. *Atlanta, K. & N. Ry. Co.*, 106 Tenn. 28, 53 L. R. A. 931; *Baltimore & Ohio R. R. Co.* v. *Larrill*, 83 Ohio State 108, 93 N. E. 619, 34 L. R. A. (N. S.) 1195; *Southern Ry. Co.* v. *Miller*, 217 U. S. 209; 9 R. C. L. 212-13; *Carr* v. *Howell*, 97 Pac. 885. See, also, *Dressler* v. *Carpenter*, 107 Ark. 353.

The appellant contends that this nonsuit statute (section 5083, Kirby's Digest) cannot toll the general statute of limitations because the three years had not yet expired at the time the nonsuit was taken and there was some time remaining before such expiration in which appellee might have brought this suit. The nonsuit statute very plainly says that "the plaintiff may commence a new action within one year after such nonsuit suffered." The limitation of one year, therefore, cannot be construed to apply to causes only where the time of limitation under the general statute shall have expired at the date of the dismissal. As said in *Love* v. *Cahn*, 93 Ark. 215, this statute "instead of shortening the period of limitation,

really extends the period provided by the general stat-
ute of limitations applicable to the cause of action.''
See, also, *Dressler* v. *Carpenter, supra; Knox* v. *Henry et
al.,* 55 Pac. 668; *Meek* v. *Norfolk & S. R. R. Co.,* 42 S. E.
333; *Bates* v. *S. D. & C. R. R. Co.,* 12 Ohio State 620.

*Second.* The appellant contends that there was no
evidence tending to prove that the injuries received in
the wreck were the proximate cause of the tuberculosis
which thereafter developed and became active in appel-
lee's body for which he alleged, and was allowed to re-
cover, damages. The appellant, in several of its prayers
for instructions, requested the court to withdraw from
the jury the issue of damages alleged to have accrued to
appellee from tuberculosis caused from the injuries re-
ceived by reason of the derailment. The court refused
these prayers, and appellant now insists that this ruling
was erroneous.

Over the objection of appellant the following hypo-
thetical question was propounded to four physicians who
qualified as experts:

"Q. In June, 1904, the plaintiff had his right elbow
scraped for tuberculosis. He was not relieved, and in
August, 1906, the arm was amputated above the elbow
on account of the tuberculosis in that joint. He made a
good recovery from the operation and was in good health
up till August 28, 1914, at which time he weighed 165
pounds, his normal and usual weight, and had no active
tuberculosis. In August, 1914, while riding on a train
the coach in which he was riding was derailed, while he
was asleep and while it was being overturned he was
thrown from his seat to the opposite side of the car in or
on the parcels rack, by which he was injured on his head
and other parts of the body to the waist line. And he re-
ceived at the time a bruise on the right groin beginning
about here, indicating, and extending about four inches
up the groin about the width of my two fingers. Both
of his legs between his ankles and his knees were bruised
and skinned so that his underclothing stuck to the flesh
for about sixteen hours. He didn't know of the injury

to his shins above described till after he had been taken back into one of the cars as heretofore stated. When he attempted to extricate himself from the position in which he had been thrown, he was in a dazed condition, and somewhat nauseated. He extricated himself from this position and walked with difficulty to the end of the overturned coach, during which time he was suffering severe pain, and about the time he attempted to get out of the door of the car he became unconscious or fainted, and when he recovered from this condition he was lying on the railroad embankment from which place he was removed to a coach near the coach which was derailed. While in this car he suffered intense pain, became nauseated and it was then that he discovered the injuries below his knees. He was carried to Fort Smith, arriving there about four or five o'clock p. m. of that day. He received a bruise on his back and on his groin, and afterwards suffered severe pain from the injury to the groin. He received a severe shock, nervous shock, as well as the injuries above described. He was in bed about four or five days, during all of which time he suffered severe pains, and at times was forced to get up on account of pains and then go back to bed. While sitting up he suffered as much pain as while sitting or lying down. His urination which was normal before the accident became frequent, causing him to go to the toilet five or six times each night. That he began to lose weight soon after the accident and injuries described which he never regained, and was 25 pounds lighter at the time of the operation for the removal of the first testicle. At said operation the testicle was found by examination and incision after removal to contain tuberculosis nodules and was in an acacious or cheesy condition. He doen't know whether there was any injury to his testicles at the time of the accident. He discovered no bruises on the scrotum, and felt no pain in the testicles at the time of the accident. In December afterwards he felt an occasional pain in his groin where it was injured, or where it had been bruised. He noticed no pain in his testicles till about June, 1915,

when there was pain, a sort of pulling down pain. In July following the testicle became enlarged to the extent that it was in the way and the pain was more continuous. In August following, which was just one year after the accident, he had his testicle, which was on the same side that the groin was bruised, removed, and when removed it was found full of tubercular nodules and in an acacious or cheesy condition. In April, 1916, another operation was performed, removing a part of the spermatic cord; when removed it was found to be full of tubercular nodules and in an acacious, cheesy condition. In July, 1916, the other testicle became affected and was removed and when removed was found in an acacious, cheesy condition. He received no injury from the time of the accident in the railroad wreck up to the time of the operation and suffered no illness or symptoms except those produced by the accident before described. But never recovered his normal condition after the accident and before the operation. Now, doctor, assuming those facts to be true as stated, give your opinion as to whether the injury received in the railroad accident caused or produced the tubercular condition of his testicles or spermatic cord or either of them?''

The witness answered that the injuries caused the condition of tuberculosis found in the appellee's testicles and spermatic cord at the time of the operation, when same were removed. Some of these witnesses further testified, in answer to questions, ''that tuberculosis was not like any other disease. It does not run on schedule time. Tubercular bacilli lie in the latent condition for different lengths of time; sometimes they manifest themselves within a few weeks, and sometimes a year. No one can say that they manifest themselves in a certain time. They are not like typhoid bacilli or the smallpox germ.'' They further testified that any injury to a person which impaired his physical condition, causing him to lose in weight, vitality and strength, would tend to cause the inactive bacilli to become active. The witnesses answered further that any excitement or nervous

shock which would cause the condition of a person to become "devitalized, to lose his strength and vigor and his vitality," would set inactive tubercular bacilli into activity; that where a person had the bacilli of tuberculosis in his system that had become arrested, if such person received an injury that affected his general physical condition and impaired his vitality, such injury would hasten or aggravate an attack of tuberculosis.

Giving the evidence its strongest probative force in favor of the appellee, which the court must do, there was testimony tending to prove the facts upon which the hypothetical questions were grounded. These questions conformed to the rule announced in *Taylor* v. *McClintock,* 87 Ark. 243-294; *Arkansas Midland Ry. Co.* v. *Pearson,* 98 Ark. 399; *Ford* v. *Ford,* 100 Ark. 518; *Williams* v. *Fulks,* 103 Ark. 196; *Williams* v. *Cantwell,* 114 Ark. 542; *Scullin* v. *Vining,* 127 Ark. 124.

The appellant propounded substantially the same question to some expert introduced in its behalf, and also other hypothetical questions based upon the testimony in its most favorable light from the viewpoint of appellant, and the answer to these questions was in effect that the injuries caused by the wreck did not cause the tuberculosis afterwards developed in appellee's testicles.

Counsel for appellant contends that the issue as to the approximate cause of the tuberculosis in the testicles of appellee was put at large in the realm of speculation and conjecture by the testimony of the experts.

Now as to whether or not the appellee was afflicted with active tuberculosis in his arm, which was arrested by amputation in 1906; and whether or not the germs of tuberculosis may be arrested, become encapsulated, inactive and innocuous, and remain in this condition in the system for several years, and then, by reason of some injury to the person, be revived and become active and hurtful, are questions which would require scientific knowledge for their correct solution. These are matters beyond the grasp of the ordinary layman, but peculiarly appropriate for expert knowledge and opinion. Because

the experts differ in their opinions upon the same state of facts, assuming them to be true, is no reason for relegating to the realm of conjecture and speculation the issue as to whether or not the injury was the proximate cause of the tuberculosis thereafter developed in appellee. The theory upon which all expert testimony rests is that, where facts are established with reference to the subject-matter of inquiry which the common observation and experience of the jury would not enable them to correctly understand and interpret, then they may have the benefit of the opinions of those who, by reason of their special study and learning, have peculiar knowledge of the subject. Roger's Expert Testimony, page 19, sec. 6. Because experts differ in their opinions as to the conclusion to be drawn from the facts proved does not render the ultimate result to be determined by the jury one of speculation or conjecture. In such cases the question is one not of conjecture and speculation on the part of the jury but rather a question of the weight and credit to be given to the conflicting opinions of experts. As is said in Ruling Case Law, vol. 11, p. 578, sec. 10, ''Each party has the right to lay before the jury the scientific inferences properly deducible from the facts which he claims to have proved, subject to the contingency that the jury shall find such facts to be as claimed. * * * The solution of this problem which has been worked out by the courts is to permit counsel to put to the expert, after his competency has been established, a question in which the things that counsel claims to have proved are stated as an hypothesis, and the witness is asked to state and explain the conclusion which in his opinion results.'' If the experts differ in their opinion as to results, then it is the province of the jury to determine which has reached the correct conclusion. A contrary doctrine would result in the elimination of the opinions of all experts, unless they happened to be of one mind, and abrogate the rule of evidence permitting the introduction of such testimony.

Applying these principles to the facts of this record it was, therefore, an issue for the jury as to whether or

not the injuries produced by the alleged wreck were the proximate cause of the tuberculosis for which the appellee claimed damages, and the court did not err in refusing prayers for instructions which sought to withdraw that issue. ''Where fair-minded men might honestly differ as to the conclusion drawn from the facts, whether controverted or uncontroverted, the question of issue should go to the jury.'' *St. L., I. M. & S. Ry. Co.* v. *Fuqua,* 114 Ark. 112-119.

The doctrine announced by this court in the case of *M. D. & G. R. R. Co.* v. *Steel,* 108 Ark. 14, is applicable here. See, also, *St. L., I. M. & S. Ry. Co.* v. *Steel,* 129 Ark. 521-527; *Rieff* v. *Interstate Business Men's Acc. Assn.,* 127 Ark. 254-259; *Biddle* v. *Jacobs,* 116 Ark. 82; *Sterling A. Cor. Co.* v. *Strope,* 130 Ark. 435; *Hurley* v. *New York & Brooklyn Brewing Co. et al.,* 43 N. Y. Supp. 259.

Counsel for appellant presents many assignments of error in the rulings of the court in granting and refusing prayers for instructions.

The injury occurred in the State of Oklahoma. The issue of negligence was sent to the jury under instructions which declared the law in substantial compliance with the statute of Oklahoma and in conformity with the doctrine announced by the Supreme Court of that State. See *St. L. & S. F. R. R. Co.* v. *Posten,* 124 Pac. 2; *Lusk et al.* v. *Wilks,* 172 Pac. 929; sec. 800, Revised Laws Okla. 1910.

Only a general objection was reserved at the trial, to the rulings of the court, and we find no inherent defect in any of the instructions. The errors, if any, were merely those of verbiage which could have readily been corrected if the attention of the court had been specifically called to same. The charge of the court taken as a whole on this issue and on the issue as to the proximate cause of the tuberculosis in the testicles of appellee correctly declared the law, and fully and fairly submitted these issues to the jury, and there was testimony to sustain the verdict.

We find no error in the rulings of the court in the admission or rejection of testimony. The judgment is, therefore, affirmed.