BRACE *v.* OIL FIELDS CORPORATION.

Opinion delivered May 2, 1927.

1. CORPORATIONS—CONTRACTS OF PROMOTERS.—The general rule is that, since the promoters of a corporation are not in any legal sense its agents before it comes into existence, a contract made by them is not binding on it when formed unless it is then ratified.

2. CORPORATIONS—CONTRACTS OF PROMOTERS.—Where the formation of a corporation was in contemplation, and the promoters of the corporation were taking steps to perfect its organization, and obtain a charter, and provide the means necessary for its successful operation, contracts made by such promoters for the benefit of the corporation, which were reasonable and proper to put it into operation, and the benefits of which were afterwards accepted by the corporation, become binding on the corporation without any form of contract.

3. CORPORATIONS—CONTRACT OF PROMOTER.—Employment of a geologist by the promoter of an oil company which was being organized, *held* binding upon the corporation subsequently organized.

4. EVIDENCE—MATTER OF COMMON KNOWLEDGE.—It is a matter of common knowledge that an association of persons for the purpose of locating the oil and gas territory cannot operate successfully without a geologist.

5. DAMAGES—BREACH OF CONTRACT.—The measure of damages for an oil company's breach of its contract to pay its geologist a bonus of $10,000 in stock, was the value of the stock at the time of the breach.

6. FRAUDS, STATUTE OF—CONTRACT TO PAY SALARY.—A verbal agreement to pay a geologist a stated salary and bonus in stock for services for one year was not invalid under the statute of frauds.

7. FRAUDS, STATUTE OF—EMPLOYMENT FOR MORE THAN YEAR.—An oral agreement for more than one year, whereby a corporation agreed to pay to a geologist a certain amount of money and stock at the end of each year in consideration of services, would be enforceable by the geologist at the end of the first year as to services performed, the statute not being applicable thereto.

8. APPEAL AND ERROR—CONFLICT IN RECORD.—In the case of a conflict between the recitals of a decree and those of the bill of exceptions, the former will prevail.

Appeal from Ouachita Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed in part.

## STATEMENT OF FACTS.

Frank Lowe brought this suit in equity against Gordon Ingalls and Oil Fields Corporation to ask for an accounting and the appointment of a receiver to take charge of and wind up the affairs of four trusts which were operated by the defendant, Gordon Ingalls, as trustee for himself and others beneficially interested. After the receiver was appointed, O. L. Brace filed a claim for services performed by him as geologist for the benefit of the trust property.

O. L. Brace is a petroleum engineer by profession, and had worked in practically all of the oil fields in the western part of the United States and in Mexico before he was employed by Gordon Ingalls for himself and the various syndicates which he operated. Brace first commenced to work for Ingalls on the 3d day of March, 1923, at the sum of $250 a month and what he termed a "carried interest" and his expenses. Ingalls and Brace agreed that the "carried interest" should be $10,000 worth of stock a year in addition to his salary during the time in which he was with the organization. His salary was raised on November 1, 1923, to $450 a month. After Brace began work with Ingalls, he received an offer from a company in Mexico to work for it as geologist at a salary of $12,000 per year and expenses. There had been no definite time beyond the period of one year that Brace was to work for Ingalls. It was then agreed that Brace should work for Ingalls for five years, and that he should have a bonus of $10,000 a year in stock in the Oil Fields Corporation, which was being organized to take over the other companies in which Ingalls was interested. This was in addition to his monthly salary and expenses. Geologists employed by promotion companies are paid larger salaries than those working for the large companies, because, where a geologist associates himself with a promotion company, he runs the risk of losing his reputation if he makes mistakes in locating oil and gas territory.

A receiver was appointed for the companies represented before the written contract between Brace and Ingalls was executed, and the receiver notified Brace that his services were ended about the 11th or 12th of March, 1924. During the year he worked for Ingalls and his associates Brace gave his entire time to this work. He filed a claim with the receiver for something over $2,000, and he has been paid $500 on the claim. The testimony of Brace is corroborated by that of Gordon Ingalls and contradicted by that of the attorney for the company.

Other evidence will be stated and discussed in the opinion.

The chancellor allowed the claim of Brace for salary in the sum of $1,566.59, but found that his claim for $10,000 on account of the alleged stock bonus was not a proper charge, and that he was not entitled to recover anything on it. Brace has appealed from that part of the decree refusing to allow his claim on account of the alleged stock bonus.

*Gaughan & Sifford,* for appellant.

*Albert L. Wilson,* for appellee.

HART, C. J., (after stating the facts). The record shows that O. L. Brace was employed as a geologist by Gordon Ingalls in behalf of himself as trustee for those who were beneficially interested with him in locating and developing oil and gas leases and selling interests in the same. After the employment of Brace, he devoted his entire time to his work as geologist for Ingalls and his associates. It was finally determined to organize the Oil Fields Corporation to take over the interests of Ingalls and his associates in all the companies which he was representing. Before the organization of that corporation Brace had performed most of his services as geologist. He did not know whether the terms of his employment had ever been stated by Ingalls to his associates or whether or not they had ever ratified his employment. He relied entirely upon the word of Ingalls in the premises. Ingalls testified that he informed his

associates and the directors in the Oil Fields Corporation after it was organized that he had employed Brace as geologist and of the terms upon which he had employed him. This was denied by the attorney for Ingalls and his associates. He testified that they knew nothing whatever about the employment of Brace as geologist, and that his employment was never ratified at all. The attorney was himself a director and was present at all meetings of the board. Under these circumstances it is earnestly insisted that Brace was not entitled to any bonus whatever. His right to the amount allowed by the chancellor is not contested, and it is only sought to uphold the decree of the chancellor in the matter.

It is true the general rule is that, since the promoters of a corporation are not in any legal sense its agents before it comes into existence, a contract made by them is not binding on the corporation when formed unless it it is then ratified. To prevent fraud and imposition and in order to do substantial justice, courts of equity have ingrafted an exception on the general rule, which, as stated in *Little Rock and Fort Smith Railway Co.* v. *Perry,* 37 Ark. 164, amounts to this: "That, where the formation of a corporation was in contemplation and the promoters of the corporation were taking initiatory steps to perfect its organization and obtain a charter, and provide in advance the means necessary for its successful operation, all contracts made by such promoters, for the benefit of the future corporation, and which were reasonable and proper to put it in operation, and the benefits of which were afterwards accepted by the corporation, became binding on the corporation without any formal contract to pay."

In *Perry* v. *Little Rock & Fort Smith Ry. Co.,* 44 Ark. 383, the court said:

"The services performed must be intended at the time to inure to the benefit of the future corporation, must be made or done in its behalf, and with the expectation and confidence that the company will be bound, and not the credit of the individuals."

To the same effect see *Bloom* v. *Home Insurance Agency*, 91 Ark. 367, 121 S. W. 293. In that case the court said that, where all parties, after the organization of the corporation, recognized and acted on the original contract, all parties to it are bound by its terms.

In the application of this principle to the facts as disclosed by the record, we think the chancery court erred in not allowing Brace what he calls his stock bonus of $10,000. It is a matter of common knowledge, as well as implied from the circumstances in evidence in this case, that an association of persons for the purpose of locating oil and gas territory suitable for their purpose cannot operate successfully without a geologist. The attorney of the company recognizes that his services inured to the benefit of the company and were necessary in behalf of the promoters. He contends, however, that the services of the geologist were not necessary and should not be paid.

It is apparent, from the very nature of the business, that the companies could not operate at all, with any degree of success, if they did not have some one with sufficient experience to advise them as to whether the territory selected by them could be successfully explored for oil and gas. The companies were organized for this very purpose, and, unless they intended to act in a fraudulent manner, the promoters could not act with any intelligence without the services of a geologist or some one who had practical knowledge of the surface indications of oil and gas. Besides this, Ingalls testified that he made known to the directors of the Oil Fields Corporation the fact that he had employed Brace, and they ratified his action. According to the testimony of Brace, it was the custom of those promoting ventures of this sort to give the geologist a bonus in the way of an interest in the property. This was done because the geologist stood a chance to lose his reputation if he could not successfully locate oil and gas territory for those who employed him.

It is next insisted by counsel for appellees that, even if the stock bonus of $10,000 be allowed Brace, he should only be entitled to recover its value. On the other hand, it is the contention of Brace that the measure of damages for breach of the contract to pay a fixed sum in a particular commodity should prevail, and that his measure of damages would be the sum stated, and that the value of the property at the time of the breach would not be material. We do not agree with counsel for Brace in their contention, which, we think, is contrary to the settled rule of this court on the subject under the particular facts of this case.

In *Johnson* v. *Dooley,* 65 Ark. 71, 44 S. W. 1032, 40 L. R. A. 74, and in *Burnside* v. *Union Sawmill Co.,* 92 Ark. 118, 122 S. W. 98, it is held that, where the contract is not for a sum stated in property but for a specific property, the measure of damages is the value of the property at the time of the breach.

Without reviewing the testimony on this point or stating it in detail, we are of the opinion that it was the intention of the parties that Brace was to be paid a bonus of $10,000 in the stock of the companies which he represented. As stated by him, it was all a speculative venture and promotion scheme, and a bonus was usually given to geologists in cases of this sort because they stood a chance of injuring their reputations if they did not successfully locate oil and gas territory for those whom they represented. In other words, Brace was to exchange his work for stock, and monetary terms were necessarily used, not for the purpose of expressing value, but as the only mode of expressing quantity. The amount of stock to be given to him was not a money indebtedness, but was a stock indebtedness. Consequently he would benefit from any increased value of the stock and would suffer loss by its depreciation. When Ingalls and his associates failed or refused to issue him the stock, he became entitled to recover the value of it, and, according to the evidence in the record, at the time of the breach the value of the stock was only ten cents on the dollar.

Hence the chancellor should have allowed his $1,000, for he had worked for Ingalls and his associates for one year and was to receive an extra compensation in stock of $10,000 for each year he had worked for the company.

It is next contended that the agreement was for five years, and was void under the statute of frauds. According to the testimony of Brace and of Ingalls, it was contemplated that the employment should be for five years, and a contract to that end, which was to be reduced to writing, was agreed upon. It was never entered into because of the appointment of the receiver. However, Ingalls had already made a verbal agreement with Brace to work for him and his associates as a geologist for one year, and was to pay him a stated salary per month for that work and to give him a bonus of $10,000 in stock for that year. Under this verbal agreement, Brace was entitled to recover. Besides, even if the agreement had been for a longer period of time and void under the statute of frauds, it had been completely performed for the first year. Brace had performed the contract for one year and was entitled to the remuneration for his services agreed upon for one year. In this respect the contract was completely executed, and the statute of frauds would not apply. The services performed by Brace called for payment of stock in the sum of $10,000 for each year's work. The substance of the transaction was an exchange of work for stock, and the contract provided for a certain amount of money and stock to be paid Brace at the end of each year, and the contract had been completely performed between the parties for one year at the time the receiver was appointed. Hence appellees could not rely upon the statute of frauds to defeat the contract in so far as it had been fully executed between the parties.

It is next insisted that the evidence is not properly in the record, and for this reason the decree must be affirmed. The transcript shows that the decree in the main case was entered of record on the 27th day of November, 1925, and that the decree allowing the claim

of O. L. Brace was entered of record on the 18th day of December, 1925. It is true that the chancellor, in signing the bill of exceptions, recites that the intervention of O. L. Brace was heard on the 27th day of November, 1925, but this amounted to nothing more than a clerical mistake. Where there is a conflict between the decree itself and the bill of exceptions, the recitals of the decree will prevail. *Kansas City S. Ry. Co.* v. *Akin,* 138 Ark. 10; 210 S. W. 350, and *Rural School Districts Nos. 2, 3 and 4* v. *Lake City Special School District,* 144 Ark. 362, 222 S. W. 732, 223 S. W. 381.

The record inferentially shows that the evidence was heard orally by the chancellor by agreement of both parties, and was reduced to writing by a stenographer appointed for that purpose. The bill of exceptions seems to have been filed as a precautionary measure in the matter. In this view of the case it will not make any difference whether the special practice act of the chancery court in question was complied with or not.

Finally, it is insisted that the appeal should be dismissed on account of the failure to serve appellees with summons. As we, have already seen, the decree was entered on the 18th day of December, 1925, and the decree recites that the appeal was prayed in and was granted by the chancery court. The transcript was filed on February 23, 1926, with the clerk of this court. Hence this contention is without merit.

The result of our views is that the chancellor erred in not allowing Brace the value of the $10,000 in stock as damages for the breach of his contract. Under the proof in the case the value of the stock should have been fixed by him at $1,000. The decree will therefore be reversed, with directions to the chancery court to allow Brace the sum of $1,000 additional, and in all other respects it will be affirmed. It is so ordered.