PETER WEISZ, Appellant, v. L. W. MOORE et al., Appellees.

No. 42587.

March 10, 1936.

Supplemental Opinion on Petition for Rehearing, and Rehearing Denied October 29, 1936.

James W. Fay, and Jensen & Wieben, for appellant.

Morling & Morling and Burt & Davidson, for appellees.

Donegan, C. J.—In October and November, 1928, Peter Weisz was employed by the defendant, J. H. Moore, to work at Hotel Kermoore operated by said Moore at Emmetsburg, Iowa. In December, 1929, said J. H. Moore received a letter from said Weisz making application for work. J. H. Moore referred this letter to his nephew, L. W. Moore, who was managing the Hotel Moore at Clarion, Iowa, which was owned by J. H. Moore. In response to this letter, L. W. Moore communicated with the plaintiff at St. Louis, Missouri, and as a result the plaintiff began working in Hotel Moore at Clarion, Iowa, in December, 1929. On the night of December 16, 1929, the plaintiff was acting as night clerk in said hotel, and, without giving L. W. Moore any notice of his intention, he left during the night, taking with him $41.66 which he had taken out of the cash register. Before leaving, plaintiff made a written statement of the amount which he claimed due him and left this statement in an envelope which was placed in the cash drawer. The amount shown by this state-

ment was $41.66, the same as the amount taken by the plaintiff from the cash register. Sometime thereafter, L. W. Moore learned that Weisz was in St. Louis. After a consultation with the county attorney of Wright county, L. W. Moore signed an information charging Weisz with embezzlement, and as a result of this information Weisz was arrested and returned to Clarion. An indictment was returned against him upon which he was tried and acquitted on the 6th day of May, 1930.

Following his acquittal, Weisz brought an action for damages for false arrest or malicious prosecution against L. W. Moore and J. H. Moore in Wright county, Iowa. This action was dismissed, and a second action against the same parties was brought in Wright county, which also was dismissed. Both of these dismissals appear to have been prior to October, 1931, and were by the plaintiff, without prejudice. Thereafter, a new action, on the ground of malicious prosecution, was brought against the Moores in Palo Alto county. Issues were joined in the latter action, and it was placed upon the trial list, and, on March 16, 1932, the plaintiff's attorney was notified that the trial of said action would begin on the following day. After an effort to obtain an agreement for a continuance with the attorneys representing the defendants, and, after talking to the trial judge, that action was dismissed by plaintiff's attorney, without prejudice, on the 16th day of March, 1932. The petition in the instant action was filed in Palo Alto county on the 12th day of September, 1932. Issues were joined, and, on April 25, 1933, the trial began. Upon the trial·of the case, the defendants, at the close of all the evidence, moved the court for a directed verdict in their favor, which motion was sustained by the court. Pursuant to this ruling, a verdict was rendered in favor of the defendants and judgment entered thereon. From such ruling and judgment, the plaintiff appeals.

**III** One of the grounds upon which the trial court directed a verdict in favor of the defendants was that plaintiff's action was barred by the statute of limitations. In so ruling, the appellant contends that the trial court committed error. It is undisputed that, under the general statute of limitations, actions for malicious prosecution, such as is here involved, must be brought within two years from the time that the cause of action accrues. The criminal action against the appellant, upon which this action of malicious prosecution is based, ended in a verdict

of acquittal for the appellant on the 6th day of May, 1930. The period of limitation for the commencement of an action for malicious prosecution would expire, therefore, on the 6th day of May, 1932. As already stated, the appellant herein had instituted two actions against the appellees in Wright county, both of which were dismissed prior to 1932. A new action was instituted by the appellant against the appellees in Palo Alto county. Issues were joined and said cause of action was for trial at said March term of court, 1932, of the Palo Alto district court. On March 16, 1932, appellant's attorney was notified that the case would come on for trial on the following morning. After a conversation by telephone with the presiding judge and with the attorneys representing the appellees, appellant's attorney was unable to obtain an agreement for a delay of the trial for a few days, and, on his direction, the case was dismissed, without prejudice. At that time the appellant still had from the 16th day of March to the 6th day of May, 1932, in which to begin a new action within the period of two years provided by the general statute of limitations. This was not done, but, relying upon section 11017 of the Codes of 1927 and 1931, the appellant delayed the beginning of a new action until the 12th day of September, 1932. The trial judge based his ruling that the instant action was barred by the statute of limitations on two grounds: First, that the statute, section 11017, has reference to cases only in which the two-year period of limitation had expired during the pendency of the prior action; and, second, that this statute was applicable only to cases in which the failure of the prior action was not due to the negligence of the plaintiff, and for that reason did not apply to this case.

The statute upon which appellant relies as authorizing him to commence the instant action at any time within six months after the dismissal of the prior action is as follows:

"11017. Failure of action. If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first."

It will be noticed that this section provides that a new action may be brought within six months after the prior action has failed for any cause except negligence in its prosecution, and

that such new action shall be held to be a continuation of the prior action. Appellees contend, however, and the trial court so held, that the six months' period within which a new action may be brought does not apply where the dismissal or failure of the prior action occurs before the expiration of the two-year period of limitation within which an action might originally be brought. In support of this contention, appellees cite 37 C. J. 1083, section 528; Phelps v. Wood, 9 Vt. 399; Grimes v. Andrews, 170 N. C. 515, 87 S. E. 341; English v. T. H. Rogers Lumber Co., 68 Okl. 238, 173 P. 1046; Jackson v. Prairie Oil & Gas Co., 115 Kan. 386, 222 P. 1114. We have examined all of these authorities, and we do not think that they are of much assistance in the construction of our statute. In the Phelps case, we find nothing in the opinion from which we can determine the precise provisions of the statute upon which the decision in that case was based. In the Grimes case, the court held that the statute authorizing the extension of time for beginning a new action would not apply, because the case involved the possession of real estate, and, under the statute applicable to such cases, the regular period of limitation had not expired. In the English v. T. H. Rogers Lumber Co. and Jackson v. Prairie Oil & Gas Co. cases, the statutes of both Oklahoma and Kansas provided that the plaintiff would have the additional time for beginning the new action, where the dismissal of the prior action was not due to the fault of the plaintiff "and the time limited for the same shall have expired." In both of these cases it was held that the additional time for beginning a new action did not apply, because at the time these actions were dismissed the period of time within which an original action in these cases could be brought had not yet expired.

It is true that there is in Corpus Juris, as cited by appellees, the statement that a statute, such as that we are considering, "is intended to reach all those cases where a suit is brought, and the merits of the action fail to be tried without the fault of the plaintiff, and the period of limitations becomes complete during the pendency of the suit"; and also the statement that "the statute does not apply where the failure of the first action occurs at a time when plaintiff has full opportunity to commence a new action; it applies only where, but for the statute, plaintiff would be barred by the statute of limitations." An examination of the cases cited in support of these statements in the text of Corpus

Juris fails to show that they furnish a foundation for the broad rule announced in the text, and relied on by appellees. It is true that some of the cases do hold that, if the period of limitation found in the general statute has not expired, the statute extending the time for commencing a new action will not apply; an examination of these cases, however, will show that the holding of the court in each case was based upon the language of the statute under consideration.

In volume 83 A. L. R. 478, there is a very exhaustive annotation covering statutes such as that we are now considering. A brief reference to this annotation and the cases therein cited is, we think, sufficient to indicate that there is no such general rule as that contended for by appellees. Thus, in Kansas City So. R. Co. v. Akin, 138 Ark. 10, 210 S. W. 350, 353, the statute providing for such extension of time for bringing a new action reads that "the plaintiff may commence a new action within one year after such nonsuit suffered," and it was construed to apply not only to cases in which the time of limitation under the general statute should have expired at the time of the nonsuit in the prior action, but also to cases wherein there had been time to bring an action after a nonsuit in the former action, before the running of the statute of limitations. Similar holdings were made in cases involving the statutes of Mississippi, Missouri, Georgia, North Carolina, District of Columbia, New York, West Virginia, and Pennsylvania.

It is contended by appellees, however, that, even if this action was not barred because not commenced within the period of the general statute of limitations which still remained after the dismissal of the prior action, the statute extending the time for beginning a new action does not apply because the prior, action was dismissed as a result of the plaintiff's negligence in its prosecution. It is argued that, because the plaintiff in this action failed to file a motion for a continuance of the prior action before instructing the court to dismiss it, he was guilty of negligence, and special reliance seems to be placed upon the cases of Archer v. C. B. & Q. Ry., 65 Iowa 611, 22 N. W. 894, and Pardey v. Mechanicsville, 112 Iowa 68, 83 N. W. 828.

In the Archer case the prior action was brought in the state court, and, on application of the defendant, transferred to the federal court. A second action was brought in the state court and the petition alleged that the prior action had not been dis-

missed because of any negligence on the part of the plaintiff, but because he did not believe that he could obtain a fair trial in the federal court. A demurrer to this petition was sustained on the ground that the cause of action was barred by the statute of limitations at the time the second action was brought. The real question involved in the case was whether the plaintiff's feeling that he could not obtain justice in the federal court was such a traversable fact as to relieve him of negligence in his failure to prosecute the prior action. In discussing the case, the opinion, after stating that a purely voluntary dismissal would not be available, but that a voluntary dismissal under compulsion might be, used the following language: "For instance, it is possible that the plaintiff, without negligence on his part, may not, be ready to try the case, and yet be unable to obtain a continuance; and in such case, if the other party insists on a trial, and the court orders it to proceed, the plaintiff might under such compulsion dismiss his action, and commence a new action, which should be deemed a continuation of the first. But suppose the plaintiff voluntarily dismisses the action for any reason, but not under any compulsion whatever, can it be said that he has failed in the action? How can it be said that he has failed until he has made at least some effort to prepare and try his action? If he fails to prepare his case for trial, and dismisses it for this reason, he is clearly guilty of negligence."

We think the language used cannot be controlling in this case, because it is mere dictum, because it does not attempt to define all conditions under which a dismissal, though voluntary, might be under compulsion, and because the facts attending the dismissal in that case were entirely different from those in the case at bar, as will hereafter appear.

In the Pardey case the prior action was dismissed by plaintiff, without prejudice, after her evidence had been introduced. The reasons given by her for doing so were, that her principal witness, because of the use of intoxicating liquors, was in such a wholly unsatisfactory and incompetent condition as not to be able to testify coherently. The plaintiff did not ask for a continuance of the case and did not even ask for a delay of a few hours, but, so far as the record showed, she dismissed the action without stating to either the court or the attorneys on the opposite side that she desired a delay. Under such circumstances, it was held that the dismissal was voluntary and not compulsory.

In the instant case, however, the facts, as shown by the record, are that the plaintiff was working in Ottumwa, which is approximately 250 miles from Emmetsburg, the place of the trial; that his attorney lived at Dysart, 150 miles from the place of trial; that the action had been brought for the March term, 1932, and had been assigned for trial at that term; that the plaintiff's attorney had written to an attorney of the defendants, with whom he was acquainted and had attended law school, stating that plaintiff would be ready for trial, but that he preferred to try the case the latter part of the week for which the jury cases were assigned, and asked the attorney for defendants to inform him as to the time when the case would be reached; that, in response to this letter, the defendants' attorney had written to plaintiff's attorney telling him that he was not the principal attorney in the case, but that he had sent the letter of plaintiff's attorney to the defendants' principal attorney and asked him to keep plaintiff's attorney advised; that the plaintiff's attorney had received no further word in regard to the time of trial until the afternoon of Wednesday, March 16th, at which time, he testified, he received a telephone message from the presiding judge informing him in substance that plaintiff's case would be called for trial on the following morning, March 17th; that plaintiff's attorney told the presiding judge that he was willing to try the case that week, but that it would be impossible for him to commence the trial on the following morning; that the presiding judge told plaintiff's attorney that, if the case was to be tried before him, the trial would have to be commenced the following day, because he, the judge, had been assigned to other duties for the following week, and the trial must be completed before that time, and that he, the judge, could not delay the trial beyond the following day unless the defendants' attorneys consented to such delay. Plaintiff's attorney testified that he thereupon called the principal attorney for defendants and tried to make some arrangement for a delay of the trial of the case, but was told that the defendants insisted upon the case being tried at that term of court, and that it could not be tried at that term of court unless arrangement could be made with the judge for some other time during the term. Plaintiff's attorney further testified that he then again called the presiding judge and asked if an arrangement could not be made by which the jury could be brought back later in the term and trial had at that time, and

was told that this could not be done; and that he then told the presiding judge that, under these circumstances, he was forced to dismiss the case, and asked the judge to enter an order dismissing it, without prejudice. We think the facts in this case are entirely different from those in the cases relied upon by appellees. Appellant claims, and so testified, that the distances from the place of his employment and his attorney's residence to the place of trial were such that it would have been difficult, if not impossible, for them to have reached the place of trial on the following morning, and there is some evidence on the part of plaintiff that he was sick at the time and would not have been able to have attended the trial. The evidence does not indicate any intention to unduly delay the trial of the case. The plaintiff merely asked for a sufficient delay so that he would be able to get to the place of trial and be prepared to enter the trial of the case. Under these circumstances, we do not think it can be said that there was a voluntary dismissal without any compulsion, because the plaintiff had not filed a formal motion for a continuance before dismissing his case.

■■■ The trial court sustained appellees' motion for a directed verdict generally without stating any particular grounds of the motion on which the ruling was based. However, the statement made by the court at the time the motion was ruled on indicates that the ruling was based, not only on the ground that the action was barred by the statute of limitations, but also on the ground that the record showed that the criminal action, which it was claimed constituted a malicious prosecution, was instigated by the defendants with probable cause. It is elementary that if a criminal prosecution is instituted with probable cause, the person responsible for its institution cannot be held liable in damages for malicious prosecution. Neither of the parties to this action question the existence of this rule, although they differ as to its application to the facts of this case. If the facts of this case were such that the trial court could, as a matter of law, say that there was probable cause for the institution of the criminal action, then the trial court committed no error in sustaining the part of the motion for a directed verdict based on that ground. The appellant contends, however, that the record does not show such a state of facts that the trial court could, as a matter of law, say that the criminal action was instituted with probable cause.

The record in this case shows that the plaintiff herein, the defendant in the criminal case, left the hotel at Clarion where he was employed late in the night; that before leaving he took from the cash drawer the sum of $41.66; that he claimed that he was entitled to this amount and left a statement showing the different items going to make it up; that he did not take a train or bus out of Clarion, but walked several miles along country roads to a filling station, where he took a bus to St. Louis; that during all of the time of his employment by L. W. Moore at Clarion, and during his previous employment by the defendant, J. H. Moore, at Emmetsburg, he had gone under an assumed name; that, while he was employed at Clarion the hotel had paid on plaintiff's laundry bill, which was not accounted for in the statement left by him in the cash drawer; that some weeks after he had left, the defendant, L. W. Moore, learned that he was in St. Louis, and that, after advising with his uncle, J. H. Moore, the defendant L. W. Moore interviewed the assistant county attorney of Wright county in regard to what had transpired. It is the contention of the appellees that, while the hotel was indebted to the plaintiff for eleven days' salary at the time he left, this unpaid salary would have amounted to only $14.66; that the items of $11 for eleven days porter work and $16 for railroad fare to St. Louis which, with the $14.66 owing him on salary as clerk, went to make up the total of $41.66 taken by the plaintiff, were not owing to him by the hotel company, and that to the extent of these two items he was guilty of embezzlement. It is also claimed by the appellees that the item of $2.73 which had been paid by the hotel company for the plaintiff's laundry bill was in no way accounted for, and that, even if the total amount of $41.66 was owing to the appellant, he was not entitled to take that much out of the cash register, for the reason that he should have deducted therefrom the amount of the laundry bill, and that, to this extent at least, appellant appropriated to his own use money belonging to the hotel.

In order that the appellees may free themselves from liability on the ground that the prosecution was commenced with reasonable cause, it is incumbent upon them to show not only that such prosecution was commenced upon the advice of the county attorney, but also that a full disclosure of all the facts was made to the county attorney. A reading of the record indicates that, in his conversation with the county attorney, the only

item of indebtedness which L. W. Moore stated that the hotel owed to the plaintiff was the item of $14.66 for eleven days' salary as clerk. Far from admitting to the county attorney that the $11 for eleven days porter work and the $16 railroad fare to St. Louis were owing by the hotel to the plaintiff, or that there might be any question about these items, Moore's statement to the county attorney was that there was no agreement in regard to these two items and that they were not owed to the plaintiff by the hotel. The county attorney testified that L. W. Moore told him that the appellant had made some protest about being obliged to do porter work, but that there was no agreement that he would be paid for this work in addition to his regular salary as clerk, and also that L. W. Moore told him that nothing was said about paying the return fare to St. Louis. The appellant, on the other hand, testified positively that he had an agreement with L. W. Moore under which he was to receive a dollar a day for the work done by him as porter, and that he was to receive his return railroad ticket to St. Louis, in case he should discontinue working for the hotel. Whatever may be said as to the unreasonableness of the testimony of appellant that he was to be paid these additional sums, for porter work and fare to St. Louis, the fact is that this evidence was in the record, and its reasonableness and truthfulness presented a question for the jury. Wilson v. Thurlow, 156 Iowa 656, 137 N. W. 956; Wilson v. Lapham, 196 Iowa 745, 195 N. W. 235; Granteer v. Thompson, 203 Iowa 127, 208 N. W. 497; Beard v. Wilson, 211 Iowa 914, 234 N. W. 802. Even if appellant was indebted to the hotel for the laundry bill and was thus guilty of taking at least that amount more than was due him under his own contention, this would not change the fact that, if his story in regard to the agreement as to porter work and fare to St. Louis be true, L. W. Moore did not make a full disclosure of all the facts to the county attorney. Under the record in this case, we are constrained to hold that the trial court erred in holding, as a matter of law, that the prosecution was commenced with reasonable cause.

Many other errors are alleged by the appellant as grounds for reversal, but, as most of these errors have to do with questions which may not occur upon a retrial of this case, we deem it unnecessary to prolong this opinion by a discussion of them.

For the reasons stated in the opinion, the ruling of the trial

court in directing a verdict for the defendants, and the judgment entered upon such verdict, are hereby reversed.—Reversed.

ANDERSON, RICHARDS, KINTZINGER, and PARSONS, JJ., concur.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING.

DONEGAN, J.——■■■ In their petition for rehearing appellees stress the claim that this court erroneously places upon the appellees, defendants in the trial court, the burden of proving probable cause, and erroneously holds that a conflict on the question of disclosure created a jury question on the issue of probable cause. Complaint is also made that the court was in error in the statement of the record on the question of full and fair disclosure. As to the latter complaint, we frankly admit that the court was mistaken in stating that "the appellant * * * testified positively that he had an agreement with L. W. Moore under which he was to receive a dollar a day for the work done by him as porter, and that he was to receive his return railroad ticket to St. Louis in case he was to discontinue working at the hotel." Under the evidence as to these matters, it was incorrect to say that the appellant testified positively that he had an agreement with L. W. Moore in regard to the amount of extra compensation claimed by him for janitor work, but we think the statement made by the witness does show an agreement as to return transportation to St. Louis.

It is true, as stated by appellees, that the burden of proving want of probable cause was upon the plaintiff. We do not think it true, however, as further contended by the appellees, that the facts in this case are such as to make it a case for the court to determine, as a matter of law, that the defendants did have probable cause in filing the information.

Appellee, L. W. Moore, testified that he had a conversation with appellant at the dinner table, the evening he arrived, and told him that his wages would be $40 per month as clerk, that he was to do the regular clerking work, set the cuspidors out in the lobby for the janitor to clean them, and to start the kitchen range about five o'clock in the morning, and that the appellant made no comment in regard to this work. Moore also testified that he never discussed with the appellant the matter of taking money out of the cash drawer for any purpose and did not tell

him he could do so and put in a slip of paper; that he did not talk to appellant about paying him for extra work; that he could not remember that appellant demanded any certain amount for the extra work; and that he did not recall that the appellant ever mentioned the fact that he was entitled to a dollar a day. Moore further testified that he never discussed the matter of appellant's transportation from Clarion to St. Louis and never told him that he would pay appellant's transportation from Clarion to St. Louis.

The appellant, Weisz, testified that, in a conversation with Moore at the dinner table the evening he arrived, Moore told him he would get $40 a month and have a little side work at night, and that the night man would tell him about the side work. Weisz further testified that he told Moore that if he did not like his position he would expect his transportation back to St. Louis, and that "he (Moore) said that he would take care of that but that if I stayed I would like it." Weisz also testified that when he went to work the night man told him he would have to do porter work, sweep the lobby, take the carpets out and beat them, and take the cuspidors out, and that from then on he did this work; that on the following night Moore told him that he would have to take care of the garage all night long if any customers came; and that about the fourth night he told Moore: "I should be getting a dollar a day extra in addition to all the extra work. He (Moore) said that he would make that right with me."

We think it may be conceded that if these facts be as testified to by the appellee, Moore, then the disappearance of the appellant under the circumstances attending it might be held by the court, as a matter of law, to furnish a reasonable cause for the filing of the information. If, however, the facts be as testified to by the appellant, Weisz, we do not think that the court could pass upon the existence of probable cause, as a matter of law. Appellee, Moore, further testified that from an examination of the slip which was left by appellant in the cash register he knew that the appellant was claiming the money taken by him as due him. Whether or not the conversation testified to by the appellant was sufficient to show an agreement in regard to the wages for extra work, we think it was sufficient to show an agreement in regard to the return ticket to St. Louis. When all of the conversations, as testified to by the appellant, are considered in connection with appellee's admission that he knew from the slip

left in the cash drawer that appellant claimed the money taken to be due him, we think there is ample in the evidence to indicate that the appellant might honestly have thought that he was entitled to this money, and that the appellee, Moore, knew that appellant took the money out of the cash drawer with no thought or intention of embezzlement, but with the honest belief that it belonged to him and that he had the right to take it. We think that, under the facts in this case, the rule announced in Erb v. German American Insurance Company, 112 Iowa 357, 364, 83 N. W. 1053, 1055, is applicable:

" 'When the facts are in controversy, the subject of probable cause should be submitted to the jury, either for specific finding of the facts or with instructions from the court as to what facts will constitute probable cause.' "

If the facts relied upon by appellees were not sufficient to constitute probable cause, they might still justify the filing of the information if, before doing so, a full, fair and complete disclosure of all the facts known to them had been made to an attorney, and they had then acted upon the attorney's advice in instituting the prosecution. We do not think that, under the state of this record, it can be said, as a matter of law, that such a full, fair and complete disclosure was made, because there is a conflict in the evidence as to the truth of some of the things told the attorney and as to other things not disclosed. Appellee denied that there was any talk of or any agreement in regard to the transportation of appellant back to St. Louis, and denied that he talked to the appellant about paying him for extra work or that the appellant demanded any certain amount for extra work. Hobbet, the attorney, testified that Moore told him the item of $14.66 for salary was correctly figured; that as to the $11.00 item for porter work there had been some talk about extra work, that appellant made some objection about this extra work, that on one or two or possibly three occasions the appellant had stated to Moore that he did not like doing this extra work; and that appellee stated to the witness that there was no talk about the carfare to St. Louis. There is sufficient discrepancy between the testimony of the appellee and of the attorney to raise a question as to whether a full, fair and complete disclosure was made. When to this is added the testimony of the appellant as to his conversations with appellee in regard to extra work and trans-

portation back to St. Louis, and privilege of taking money due him out of the cash drawer, by leaving a slip, there would seem to be no doubt that the question whether or not a fair and complete disclosure was made was one which would have to be determined by the jury.

We find no merit in other grounds argued in the petition for rehearing and, with the addition of the statements above set forth, we find that the opinion heretofore entered should stand, and that the petition for rehearing should be, and is hereby, overruled.