Robert E. JOHNSTON and Delores M. Johnston, Appellees,

v.

**NORFOLK SOUTHERN CORPORATION and its subsidiary Norfolk and Western Railway Company, Appellants.**

No. 88–1617.

Supreme Court of Iowa.

Nov. 22, 1989.

As Amended on Denial of Rehearing Dec. 21, 1989.

Randy Duncan, Hugh J. Cain, and Timothy C. Hogan of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellants.

Donald G. Beattie of Skinner, Beattie & Wilson, P.C., Altoona, for appellees.

Considered by LARSON, P.J., and SCHULTZ, CARTER, LAVORATO, and ANDREASEN, JJ.

CARTER, Justice.

Defendant Norfolk Southern Corporation and its subsidiary, defendant Norfolk and Western Railway Company (hereinafter referred to collectively as Norfolk), appeal from a judgment against them in favor of plaintiffs, Robert E. Johnston and Delores M. Johnston. Plaintiffs had sought recovery for the subsidence of their property as a result of a landslide allegedly caused by defendants' negligence. The jury awarded the plaintiffs $12,000 in compensatory damages and $200,000 in punitive damages.[1]

Norfolk contends on appeal that it should have been granted a directed verdict on all claims and, in the alternative, that the amount of punitive damages awarded was excessive. Upon considering the claims of the parties, we affirm the judgment for actual damages, reverse the judgment for punitive damages, and remand the case to the district court for retrial of the punitive damage issues.

Norfolk operates a railroad running through central Iowa. In the mid-1960s a segment of its railroad track had to be relocated to accommodate the Red Rock Dam Reservoir project. The relocation, which was designed by the United States Army Corps of Engineers, required a cut to be made in an existing hillside adjacent to plaintiffs' property.

Norfolk began using the relocated tracks in 1967 and experienced no problems with the adjacent terrain for the first six years following the relocation. Sometime in 1973, however, dirt began sliding down the hillside located between the property owned by plaintiffs and the railroad tracks. Evidence presented at the trial indicated that the cause of this instability was the cut which had been made in the hillside at the time of the track relocation.

Between 1973 and 1984, Norfolk was frequently required to remove dirt that slid onto or near the railroad tracks. In 1984 and 1985, it undertook an extensive project to reslope the hillside, hoping to alleviate the landslide problem. Shortly following this work, a segment of the hillside on plaintiffs' property subsided from the adjacent land leaving a vertical cliff. Approximately 1.43 acres of plaintiffs' 14.3-acre tract was lost in the process. Evidence offered at the trial indicated that, unless the hillside is effectively stabilized, an additional 2.8 acres of plaintiffs' property will ultimately be lost in like manner. Other evidence indicated that plaintiffs' property valued at $3000 per acre was suitable for residential development.

The plaintiffs' expert witness testified that the method employed by Norfolk in reshaping the hillside was a "totally unacceptable" engineering technique for dealing with the landslide problem. This witness testified that the subsidence of plaintiffs' property was fully predictable given the nature of Norfolk's activities. Additional facts bearing on the case will be discussed in our consideration of the legal issues presented.

I. *Whether Norfolk Was Entitled to a Directed Verdict.*

◼ Norfolk contends that it was entitled to a directed verdict on plaintiffs' damage claims. In arguing this point, Norfolk concedes that a jury issue existed concerning whether or not it reshaped the embankment in a negligent manner. It contends, however, that there was insufficient evidence to generate a jury question as to the

---

1. In an answer to a special interrogatory, the jury found that Norfolk's conduct was not directed specifically at the claimant. Consequently, 25% of the punitive damage award, after payment of all applicable costs and fees, is for the benefit of the plaintiffs and the remainder is for the benefit of the civil reparations trust fund pursuant to Iowa Code § 668A.1(2)(b) (1987).

required causal relationship between any negligence on its part and the damage to plaintiffs' property.

As a basis for this claim, Norfolk relies on certain testimony by plaintiffs' expert witness on cross-examination. This testimony was as follows:

Q. Okay. And if you had that situation where you had this landslide created by the unnatural valley, would you expect the hillside to continue to erode until it reached some kind of stable slope? A. Yes.

. . . .

Q. Okay. Isn't it true then that you cannot say, based on a reasonable degree of engineering certainty, how much erosion of the 1.43 is due to the roadbed improvement project performed by the railroad in 1984 and 1985, because of the limited information you have in this case, and how much is due to whatever preexisting condition there was? A. That's true.

In considering Norfolk's contentions, we note that the existence or nonexistence of a material fact is seldom established by reference to isolated statements of an adverse witness on cross-examination. *See Cork-ery v. Greenberg*, 253 Iowa 846, 850, 114 N.W.2d 327, 329 (1962). The cross-examination of plaintiffs' expert which is quoted above does not constitute all of the testimony of that witness bearing on the issue of proximate cause. On direct examination, the witness had testified as follows:

Q. [W]hat is your opinion, based on reasonable engineering certainty, concerning the causal connection between what the railroad did in 85 in removing the toe and what it failed to do in attempting to stabilize the slide with respect to Bob Johnston's ground being destroyed? A. I feel that it initiated a renewal of landsliding.

. . . .

Q. And can you state based on reasonable engineering certainty, whether or not the actions of the railroad in 1985 in removing the dirt that it did and cut-

ting back to the Johnstons' property line very materially aggravated the condition that existed? A. It did.

Q. And can you state based on reasonable engineering certainty whether or not it was a certainty at that point in time that Bob Johnston and Dee Johnston's ground was going to chunk off and slide down the hill? A. Yes.

Q. And what is that opinion? A. That it would occur.

In attempting to reconcile the testimony of this witness on direct and cross-examination, the jury could have found that it was his expert opinion that the action of Norfolk in 1985 caused the landslide upon which plaintiffs' claims were based.

Although plaintiffs' expert witness recognized that a preexisting condition was part of the cause of the landslide, that circumstance does not necessarily free Norfolk of causal responsibility. It does not appear from the evidence that, absent Norfolk's negligence, the preexisting condition would have produced a landslide at the same time and to the same extent as that which caused plaintiffs' property to subside. Norfolk had been operating its railroad over the relocated segment for seventeen years prior to the landslide occasioned by its 1985 restoration project. Consequently, we believe it was required to deal with its property in full recognition of the condition in which it existed.[2]

Even if preexisting conditions are considered part of the causal chain leading to the losses which plaintiffs sustained, the resulting harm cannot be apportioned between the probable consequences of the preexisting conditions and the consequences resulting from Norfolk's negligence acting upon those conditions. As a result, we believe that the rule set forth in Restatement (Second) of Torts section 879 (1979) applies. That rule provides:

If the tortious conduct of each of two or more persons is a legal cause of harm that cannot be apportioned, each is subject to liability for the entire harm, irre-

2. Norfolk suggests that the preexisting condition was attributable to poor engineering by the United States Army Corps of Engineers at the time of the track relocation in the 1960s.

spective of whether their conduct is concurring or consecutive. *Id.*[3] *See also Becker v. D & E Distrib. Co.*, 247 N.W.2d 727, 731 (Iowa 1976).

A similar result prevails even if the alleged contributing condition was not the result of negligence. As recognized in Restatement (Second) of Torts section 439 (1965):

> If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's *innocent,* tortious, or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability.

(Emphasis added.) Comment *a* accompanying the latter section of the Restatement indicates that this rule applies even where the conduct of the actor and a third person are *not* simultaneous. In applying these principles to the present facts, we conclude that there is substantial evidence to support the jury's determination that Norfolk's negligence was a proximate cause of plaintiffs' damage.

II. *Sufficiency of Evidence to Sustain the Award of Punitive Damages.*

Norfolk does not challenge the submission of plaintiffs' punitive damage claim to the jury except to assert the impropriety of permitting a punitive damage award where there is no legally viable claim for actual damages. Because we have rejected Norfolk's only challenge to the award of actual damages, we are presented with no basis for holding that the district court erred in submitting the matter of punitive damages to the jury.

█ There does remain, however, a contention by Norfolk that the jury's verdict on the punitive damage issue was excessive. Cases in which this court has overturned punitive damage awards have primarily involved situations where it was improper to have submitted punitive damages

to the jury. *See, e.g., C. Mac Chambers Co. v. Iowa Tae Kwon Do Academy,* 412 N.W.2d 593, 599 (Iowa 1987); *Kimmel v. Iowa Realty Co.,* 339 N.W.2d 374, 384 (Iowa 1983); *Muchmore Equip., Inc. v. Grover,* 315 N.W.2d 92, 101 (Iowa 1982). Apparently, the last reported case in which this court overturned a punitive damage award because the amount awarded was excessive is *Sergeant v. Watson Brothers Transportation Co.,* 244 Iowa 185, 197, 52 N.W.2d 86, 95 (1952). That case applied a "shock the conscience" standard of review.

We recently examined the criteria for reviewing claims of excessive punitive damages in *Ryan v. Arneson,* 422 N.W.2d 491 (Iowa 1988), a case in which the punitive damage award was upheld. We concluded that our primary focus in reviewing punitive damage awards should be the relationship between the dollar amount awarded and the wrongful conduct of the offending party. *Id.* at 496. We further concluded that legal precedent is of limited value in evaluating the amount of punitive damage awards in individual cases. *Id.* Our review of the evidence in the present case under the *Ryan* standard convinces us that the jury's award of punitive damages was grossly excessive.

Although Norfolk may have heedlessly ignored the probable harm to plaintiffs from its quick-fix solution to the landslide problem, its actions were not sufficiently egregious, given the degree of potential harm, to warrant punitive damages of the magnitude awarded. Consequently, although we affirm the judgment for actual damages, we reverse the judgment for punitive damages and remand that issue to the district court for a new trial on that issue. On retrial, the trier of fact shall be required to respond anew to the matters set forth in Iowa Code section 668 A.1(1)(a) and (b) (1987). Costs on appeal are assessed equally between the parties.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

3. This rule is modified to the extent that apportionment of damages among responsible persons occurs under Iowa Code ch. 668. Such apportionment only concerns persons who are parties to the action or released parties. In the present case, there is no party or released party other than Norfolk to whom causal fault is attributed.

All Justices concur except SCHULTZ, J., who concurs in part and dissents in part.

SCHULTZ, Justice (concurring in part and dissenting in part).

I concur in the majority opinion with the exception of the remand for a redetermination of punitive damages. I would allow plaintiffs to accept a remittitur of $25,000 in lieu of a new trial for punitive damages.

I realize that for many years our case law has followed the principle that no remittitur is permitted if punitive damages are found to be excessive, and the only remedy is to set aside the award. *Northrup v. Miles Homes Inc. of Iowa*, 204 N.W.2d 850, 861 (Iowa 1973); *Claude v. Weaver Constr. Co.*, 261 Iowa 1225, 1233, 158 N.W.2d 139, 145 (1968); *Boyle v. Bornholtz*, 224 Iowa 90, 94, 275 N.W. 479, 482 (1937); *Haines v. Welker & Co.*, 182 Iowa 431, 441, 165 N.W. 1027, 1030 (1918); *Cain v. Osler*, 168 Iowa 59, 68, 150 N.W. 17, 21 (1914); *Ahrens v. Fenton*, 138 Iowa 559, 562, 115 N.W. 233, 235 (1908). Most of these cases indicate that the amount of punitive damages is a matter of jury discretion. We have taken the position that an excessive verdict due to passion and prejudice vitiates the entire verdict and that the sole remedy is a new trial. *Boyle*, 224 Iowa at 94, 275 N.W. at 482. In *Sergeant v. Watson Brothers Transportation Co.*, 244 Iowa 185, 199–200, 52 N.W.2d 86, 95 (1952), relied upon by the majority, our court not only granted a new trial on punitive damages but also rejected the trial court's remittitur of the actual damages award and granted a new trial on this issue as well. To be consistent with *Sergeant*, the majority holding should also grant a new trial on the award of actual damages.

I would abandon our previous case law which prevents using Iowa Rule of Civil Procedure 250 to grant new trials subject to the acceptance of a remittitur of punitive damages. One authority criticizes our rule and states:

> The prospect of requiring a successful and perhaps deserving plaintiff to undergo the costs, delays, and hazards of a new trial on all issues undoubtedly inhibits trial judges and appellate courts from interfering with a punitive damages award, even in cases where, absent such as constraint, justice would be better served by a lesser award.

> .    .    .    .    .

> The no-remittitur rule seems unduly restrictive of the courts' power to control the jury in an area where guidance is minimal, the potential for awards of unjustified magnitude is great and a workable remedy is at hand.... Iowa courts have used remittitur to control jury discretion in the awarding of damages for intangible harms, such as pain and suffering, and there is no compelling reason to prevent them from using remittitur to control punitive damages.

Ellis, *Punitive Damages in Iowa Law: A Critical Assessment*, 66 Iowa L.Rev. 1005, 1058–59 (1981) (footnotes omitted).

I believe that simple economics and common sense support the professor's observations. Our case law has evolved without careful reasoning and should be overturned. The vast majority of other jurisdictions allow remittitur of punitive damages awards. Iowa stands alone. K. Redden, *Punitive Damages* 717 (1980); Riley, *Punitive Damages: The Doctrine of Just Enrichment*, 27 Drake L.Rev. 195, 222 (1977–1978). We should abandon our minority view and our "all or nothing" approach.